## L. H. SHERMAN, Respondent, v. COMMERCIAL PRINTING COMPANY, Appellant.

### St. Louis Court of Appeals, January 31, 1888. .

1. PERSONAL PROPERTY—DETENTION—DAMAGES.—An action for damages for the conversion of personal property is maintainable where it appears: (1) That the plaintiff is the owner of the property; (2) that the defendant, holding the property in possession, fails to show any lien upon it, or other right of detainer; (3) that the plaintiff has demanded the possession, and that this was refused, before the bringing of the action.

2. ————— ————— STORAGE—BAILMENT.—A person who merely grants storage-room for the property of another, without any duty undertaken with relation thereto, is not a bailee, and has no right to demand of one who claims to be the owner proof of his title, as a condition of surrender, upon his demand of possession. In such a case, it is not necessary to prove that the defendant "knew, or ought to have known, by the exercise of ordinary care and diligence," that the property belonged to the plaintiff.

2. ————— ————— CONVERSION, WHAT.—It constitutes a conversion to unlawfully withhold the property of another against his demand, whether the detainor intends to make the property his own, or not.

4. CORPORATION—LIABILITY FOR ACTS OF ITS OFFICERS.—A corporation cannot, by its by-laws, or any constating instrument, avoid liability for the wrongful acts of its officers or servants, done within the scope of their agencies.

5. PRACTICE—EXCESSIVE DAMAGES—REMITTITUR.—The rule that, in certain cases, a verdict for grossly excessive damages will not be cured by a *remittitur*, has no application to a case where it is evident that the result reached after entry of the *remittitur*, would be the same upon another trial.

APPEAL from the St. Louis Circuit Court, HON. LEROY B. VALLIANT, Judge.

*Affirmed.*

E. P. JOHNSON, for the appellant: The verdict in this case was grossly excessive, unwarranted by any

interpretation of the evidence, and could not be cured
by *remittitur*.    *Doty v. Steinberg*, 25 Mo  App. 328 ;
*Koeltz v. Bleckman*, 46 Mo. 320.    There is no evidence
to sustain a verdict for the conversion of the property
in controversy by either appellant or any of its officers.
2 Greenl. on Evid., sec. 642 ; *Rand v. Oxford*, 34 Ala.
476 ; *Allen v. McMonagle*, 77 Mo. 478 ; *McCormack v.
Gilliland*, 76 Mo. 655 ; *Koch v. Branch*, 44 Mo. 542 ;
*Huxley v. Hartzell*, 44 Mo. 370 ; *O' Donoghue v. Corby*.
22 Mo. 393 ; *Sparks v. Purdy*, 11 Mo. 219 ; *Niemitz v.
Agricultural & Mech. Ass'n*, 5 Mo. App. 59 ; *Thoro-
good v. Robinson*, 6 Q. B. [Adol. and Ell.] 769.    Re-
spondent could recover only for conversion, if at all, in
this case.    *Duncan v. Fisher*, 18 Mo. 403 ; *McCormack
v. Gilliland*, 76 Mo. 655 ; *Kennedy v. Pruitt*, 24 Mo.
App. 414.    The court erred in excluding the records of
appellant ( Rev. Stat. 1879, secs. 760, 936), and, although
excluded, being preserved in the record, they are enti-
tled to the same consideration here as if admitted.
*Martin v. Bonsack*, 61 Mo. 556, 558–9 ; Rev. Stat. 1879,
sec. 929.    If any of the officers of appellant converted
this property, and were attempting at the time to act
for appellant, such act was *ultra vires*, and appellant
cannot be held liable for it.    *Worley v. Columbia*, 88
Mo. 106 ; *Rowland v. City*, 75 Mo. 134 ; *Thomson v.
City*, 61 Mo. 282 ; *Cheney v. Inhabitants*, 60 Mo. 53 ;
Green's Brice's *Ultra Vires* [2 Ed.] 550, 362, 363 ;
Cooley on Torts, 119 ; Morawetz on Corporations [2 Ed,]
secs. 392, 393, 580, 581, 730.    If an officer of appellant
had been attempting to hold this property for a debt .
due to it by Briggs, this would simply have been an
illegal act on his part ( *Hensley v. Hartzell*, 44 Mo. 372 ),
and appellant would not have been liable for it.    *Sulli-
van v. Railroad*, 88 Mo. 169.

H. M. Wilcox, for the respondent : "Where the
sum recovered as damages was reduced by *remittitur* to
an amount satisfactory to the judge who tried the cause,
this court will not interfere." *Lloyd v. Railroad*, 53

Mo. 509 ; *Sharpe v. Johnston*, 76 Mo. 660 ; *Cook v. Railroad*, 63 Mo. 397.   "A bailee or agent of another, who, after being apprised of the rights of the real owner, retains possession of the property, or of the proceeds of its sale, and refuses to deliver the same to such owner, is guilty of conversion."   *Dusky v. Rudder*, 80 Mo. 400. "Any wrongful taking or assumption of a right to control or dispose of property, constitutes a conversion. Any wrongful act which negatives, or is inconsistent with, the plaintiff's right, is *per se* a conversion." *Allen v. McMonagle*, 77 Mo. 478 ; *Rembaugh v. Phipps*, 75 Mo. 422 ; *Ireland v. Horseman*, 65 Mo. 511 ; *O' Donoghue v. Corby*, 22 Mo. 393 ; *Koch v. Branch*, 44 Mo. 542 ; *Culbertson v. Hill*, 87 Mo. 553.   The doctrine of *ultra vires* has no application in this case.   2 Waite's Actions and Defences, 337 ; Cooley on Torts, 119, 121 ; Boone on the Law of Corporations, sec. 78, notes, and cases cited ; 1 Addison on Torts, 1118, 1119.   "Corporations are liable for every wrong they commit, and in such cases the doctrine of *ultra vires* has no application." *Bank v. Graham*, 100 U. S. 702 ; *Woodward v. Railroad*, 85 Mo. 142 ; *Boogher v. Ins. Co.*, 75 Mo. 319 ; *Alexander v. Relfe*, 74 Mo. 495 ; *Johnson v. Dispatch Co.*, 65 Mo. 539 ; *Perkins v. Railroad*, 55 Mo. 201.   The instructions of both appellant and respondent, when considered as an entirety, give the whole law of the case.   *McKeon v. Railroad*, 43 Mo. 405.

THOMPSON, J., delivered the opinion of the court.

This action was brought before a justice of the peace to recover damages for the conversion of a chest of carpenter's tools, alleged in the plaintiff's statement to be of the value of $41.85.   On trial anew in the circuit court, the plaintiff gave evidence of the value of the tools and chest, item by item, which resulted in his conclusion that their value was forty dollars ; which value must be reduced by his admission, on cross-examination, that he had valued the tools as though they

were new, and that the difference between their value when new and their value at the time of the conversion "would not exceed five or ten dollars on all of them." If we are entitled to take the plaintiff's testimony where it is inexact most strongly against himself, the value of the property at the time of the conversion did not exceed thirty dollars. The court instructed the jury that, if they should find for the plaintiff, they should assess his damages at what the jury should believe, from the evidence, to be the market value of the chest and tools at the time when the plaintiff demanded them and the defendant refused them, with six per cent. interest from the date of the commencement of the action. The jury returned a verdict for the plaintiff in the sum of $93.30, more than double the value as claimed in the plaintiff's statement, and about three times the value as thus shown by the plaintiff's testimony. Of this amount the plaintiff, two days after the verdict, voluntarily remitted the sum of $50.05, and the court entered judgment for the residue, namely, $43.25. Afterwards the court required the plaintiff, as the condition of refusing a new trial, to remit the further sum of $12.20; so that judgment was finally entered for the sum of $31.05.

The plaintiff's evidence at the trial tended to show that one Briggs had a desk-room in the defendant's printing establishment, where he carried on the business of a publisher; that the plaintiff was in the employ of Briggs; that the plaintiff was the owner of this chest of tools, which was at Cincinnati; that the plaintiff had had it shipped to St. Louis; that, for the reason that Briggs was well known in St. Louis and the plaintiff not, the plaintiff had the tools shipped in the name of Briggs; that they arrived, with the address of Briggs marked upon the box; that Briggs procured the consent of the defendant to have the tools left in its printing establishment, where Briggs had his place of business at the time; that the plaintiff owned the chest and used the tools in repairing furniture while they were there; that

Briggs afterward left the place, and that thereafter the plaintiff went there to get his tools, and was repelled by the defendant, one of its officers claiming that he knew nothing about the plaintiff—did not recognize him ; that he sent an expressman with an order for this chest of tools, and its delivery was refused, on substantially the same ground, by an officer of the defendant ; that the defendant caused the chest of tools, with certain property which had been left there by Briggs, to be carried by defendant's porter and deposited in the basement of the building ; that the plaintiff and his attorney finally called upon the defendant, about six months after the plaintiff's first demand for the tools, and about a month before the bringing of the suit, and demanded them, and that their demand was again refused, on the ground that they did not know the plaintiff, and did not know where the tools were ; that at this interview an officer of the defendant gave the plaintiff permission to look for the box, which the plaintiff did without finding it, for the reason, it would seem, that it had already been taken down into the basement—a fact of which he was ignorant. The plaintiff's testimony also was to the effect that he had offered to prove his title to the chest of tools by his own affidavit and by the statement of Mr. Briggs. The evidence of both parties was to the effect that, late in the fall, or in the winter, before the bringing of this action (which was brought May 21, 1886), Briggs had met one of the officers of the defendant, and had told him that the chest of tools belonged to the plaintiff and not to him, Briggs. It transpired, in the course of the evidence, that Briggs had left the place while being indebted to the defendant, though, it seems, not for rent, because the defendant's evidence was to the effect that Briggs was not its tenant, though he had a desk and did business there. All the evidence shows that the reiterated excuses of the defendant's officers for not delivering the chest of tools to the plaintiff were, that they did not know the plaintiff and that they wanted to see Briggs. They, on the other hand, claim

in their testimony that they never gave Briggs permission to deposit the chest of tools in their building, and that they never refused to allow the plaintiff to take them away, provided he would satisfy them that he was the owner of them.

An analysis of the testimony leads indisputably to the following conclusions: (1) That the property in controversy belonged to the plaintiff; of this there is no dispute whatever. (2) That even if it had belonged to Briggs, the defendant has offered no evidence tending to show a state of facts which gave it any lien upon it or any right of detainer in respect of it whatever. (3) That the plaintiff had made repeated demands for it prior to the bringing of the action, which had been refused. (4) In addition to this there was no evidence tending to show that the defendant had, by officers or agents, assumed at plaintiff's request any duty of care in respect of it, and defendant's testimony is to the effect that it had not done this. The most that the evidence under this head tends to show is, that the defendant had gratuitously granted to the plaintiff, through Mr. Briggs, room for the storage of this chest of tools on its premises. A person who merely grants storage-room for the property of another, whether gratuitously or for a reward, without assuming, expressly or impliedly, any duty of care in respect of the property, is not liable to the owner if the property is carried off or injured by a trespasser, although such theft or injury might have been prevented by the slightest care on his part. He is no bailee, because delivery is essential to a bailment. Schouler Bailm., sec. 32; *Finucane v. Small*, 1 Esp. 315; *Schmidt v. Blood*, 9 Wend. 268. A person who sustains this relation merely to the property of another, who has assumed no duty of care whatever in respect of it, cannot, therefore, justify its detention against its owner on the ground that the owner has not satisfactorily established his title. The defendant, therefore, on its own evidence, had no right to insist upon the plaintiff establishing his title to

the chest of tools by other evidence than his own statement, as a justification of detaining it from him.

I.  Upon this premise we may consider the propriety of an instruction given for the plaintiff, which predicated his right of recovery upon the hypothesis that, when the plaintiff demanded the tools of the defendant's officers they knew, "or might have known by the exercise of ordinary care and diligence, that the chest of tools belonged to the plaintiff." If there was any error in this instruction, it was an error in favor of the defendant. If it was a gratuitous bailee, which is more than the evidence shows, then slight care, instead of ordinary care, in ascertaining the title of the owner, would have exonerated the defendant from liability for delivering it, through mistake, to a person other than the owner. But if, as all the evidence, and especially the defendant's, tends to show, the defendant had not become even a gratuitous bailee of the property, but had merely allowed it to be deposited upon its premises, then it was not under any duty of care toward the real owner, in ascertaining the title of any one who might demand it, claiming to be such; and hence an instruction which inferentially imposed upon it the obligation of ordinary care in ascertaining the real owner, when the property was demanded of it, was, if erroneous, an error in its favor, of which it cannot complain.

II.  We need not discuss the claim that there was no evidence of an intent to convert. The defendant's officers did not merely allow the chest of tools to remain where it had been deposited, and did not allow the plaintiff to take it when he called for it, but, according to the plaintiff's evidence, they caused their porter to take charge of it and to deposit it in another place, namely, in the basement of the building, and it seems to have been there when the last demand was made for it. So far from there being no evidence showing intent to appropriate the property to their own use, the whole evidence is scarcely consistent with any other conclusion than that the officers of the defendant determined to detain

this property from the plaintiff on account of a debt due by Briggs to the defendant. At least it was fairly a question for the jury whether their repeated refusals, and the untenable reasons given for the same, were consistent with the statements in their testimony that they had not refused the plaintiff permission to take the property on showing that he was the owner of it. A conversion to the defendant's own use, in the sense in which it has been employed in argument in this case, is not an essential ingredient of the legal idea of a conversion. If B has my property in his custody, and refuses, without a legal excuse, to restore it to me on demand, that is a conversion, whether he intends to make it his own or not. It is sufficient that he intends to hold it and to keep me from getting it.

III. The court committed no error in excluding the by-laws, charter, and also resolutions of the board of directors of the defendant company, which were tendered in evidence with the view of showing that no authority had been given by the corporation to its officers to do this act. The doctrine that a corporation is not liable for a tort which is *ultra vires* in respect of the power which has been conferred upon its officers by what are sometimes called its constating instruments, is now thoroughly exploded, and is not the law in this state. *Alexander v. Relfe*, 74 Mo. 495, 517. Such a doctrine would exempt all corporations from liability for all torts; since power is never conferred in their constitutions and by-laws to commit wrongs—a conclusion which would not only be juridical nonsense, but which would produce the most mischievous consequences in society. Corporations are now held liable for all sorts of torts, including trespasses *de bonis asportatis* (*Wolfe v. Boettcher*, 64 Ill. 316) and the frauds of their agents done within the scope of the corporate powers and of the agency (*Western Bank v. Addie*, L. R. 1 H. L. (Scotch), 145 ; *Butler v. Watkins*, 13 Wall. 450, and numerous other cases) ; and it cannot be doubted that a business corporation which has

power to hold and own personal property can become liable for the conversion of the property of another. There is no force in the view that, because this corporation was presumptively organized for the purpose of prosecuting the business of a printer, and not that of a carpenter and joiner, it could not be guilty, through its officers, of the wrongful conversion of a chest of carpenter's tools. In this state corporations have been held liable for the malicious prosecution of criminal and civil actions, although not organized for the purpose of prosecuting such actions, but for the purpose of carrying on the business of life insurance (*Boogher v. Life Association*, 7 Mo. App. 591), or a commercial business. *Iron Mountain Co. v. Mercantile Co.*, 4 Mo. App. 505. The contention of the defendant, if allowed in this case, might have the practical result of allowing this printing company to retain the plaintiff's property as security for another man's debt, but without incurring any liability therefor.

IV. The final question is, whether the award of damages as made by the jury was such as, under the evidence, indicates that their verdict was the result of passion, prejudice, or a disregard of the evidence tendered by the defendant, so as to require the granting of a new trial within the rule in *Doty v. Steinberg*, 25 Mo. App. 328, 333, and *Koeltz v. Bleckman*, 46 Mo. 320. In those cases it was held that, where a verdict is so grossly excessive and illegal as to indicate that the defendant's side of the case has not been considered by the jury, a *remittitur* will not cure the error, but there must be a new trial. But this rule cannot be applied to a case where a new trial on the same evidence would lead to the same result as has been reached by the judgment after entering the *remittitur*. In this case the verdict, outside of the question of damages, was so clearly for the right party that it would not be a proper application of the rule to send the case back for another trial. It would be useless to conjecture what led the jury into the return of the grossly excessive verdict which they ren-

dered.    It may have been that they intended to return a verdict for $43.30, and that the initial figure 4 was written, as it sometimes is, by bad chirographers, so as to read 9.    It more likely was that they were borne away by a sense of indignation at the act of the defendant in detaining, under pretexts and subterfuges, the tools of a mechanic which the latter desired to get hold of in order to make a living for himself and family, and gave the verdict which they did under the supposition that they had the right to give exemplary damages.    However it may have been, if the propriety of their verdict, outside of the award of damages was doubtful upon the testimony, we should feel bound to say that there must be a new trial ; but as it is not doubtful, we overrule this assignment of error.

It is, therefore, ordered that the judgment of the circuit court be affirmed.    Judge Rombauer concurs, Judge Lewis not sitting..