FOSTER WOOLEN COMPANY, Appellant, v. MORTON WOLLMAN, Respondent.

Kansas City Court of Appeals, March 4, 1901.

1. **Assignments:** DECLARATIONS OF ASSIGNOR: ASSIGNEE. After an assignment is completed, the declarations of the assignor can in no way bind the property, nor can those of the assignee whose only authority is to sell the property and distribute the proceeds.

2. **Contracts:** INTERPRETATION: ACTS OF THE PARTIES. Where a contract admits of different interpretations, the one adopted by the

parties will prevail; and a contract set out in the opinion, relating to the defendant's using certain fixtures for six months if he remain in business so long, is held to be capable of but one meaning and to limit the use of the fixtures to the second party in the contract to the exclusion of his assignees.

3. **Conversion:** DEMAND. The withholding of property from the real owner after demand therefor is in law a conversion.

4. **Contracts:** INTERPRETATION: BAILMENT. ELLISON, J., dissenting, holds that the provisions of the contract relates to the assigns of the second party, and he can pass the use of the fixtures, since the contract was a bailment on a valuable consideration and so assignable even against the bailor.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,* Judge.

REVERSED.

*J. V. C. Karnes* and *Henry S. Conrad* for appellant.

(1)   The estate is not bound as a matter of law by unauthorized acts of an assignee. In re Ryan, Fed. Cases, No. 12182; State ex rel. v. Hays, 52 Mo. 580; Commonwealth v. Fcnbe, 10 Mass. 30; State to use v. Scott, 42 Mo. App. 203, 205; Richardson v. Palmer, 24 Mo. App. 488; In Ferrin v. Myrick, 41 N. Y. 319; 1 Pars. Bills and Notes, 161; Summer v. Williams, 8 Mass. 199; Rittenhouse v. Ammerman, 64 Mo. 197; Woodbridge v. Draper, 15 Mo. 327; Estee's Pldg. 162; Perry v. Cunningham, 40 Ark. 185; Welsh v. Davis, 3 S. C. 110; West v. Wright, 98 Md. 335; Fritz v. McGee, 31 Minn. 536; Brown v. Evans, 15 Kan. 91; Dunlap v. Robinson, 21 Ohio St. 530; Westfall v. Dungan, 14 Ohio St. 276; Brown v. Miller, 46 Mo. App. 1; Bartlett v. Roberts, 66 Mo. App. 125; Dougal v. Fryer, 3 Mo. 40. (2)   Where one exercises dominion over property and refuses to deliver same to the owner in disregard of his title, there is a conversion. Camp-

bell v. Railroad, 16 Mo. App. 553; State ex rel. v. Maloney, 113 Mo. 367; Wright v. Butler, 64 Mo. 165; Inglis v. Floyd, 33 Mo. App. 565, 582; Martin v. Trail, 142 Mo. 85; Rembaugh v. Phipps, 75 Mo. 422, 423; Williams v. Smith, 153 Pa. St. 462; 25 Atl. 1122; Webb's Pollock on Torts (Enlarged Am. Ed.), 436; Baker v. Beers, 64 N. H. 102; Cooley on Torts, 448; Gordon v. Stockdale, 89 Ind. 240; Wagenblast v. M'Keon, 2 Grant 393; Blon v. Bolton, 3 Phila. 87; Waverly Co. v. Coop Co., 112 Mo. 383, 389; 26 Am. and Eng. Ency. of Law, 724; Williams v. Wall, 60 Mo. 318, 321; McLachlin v. Barker, 64 Mo. App. 511, 521; Watson v. Coal Co., 52 Mo. App. 366; Sherman v. Printing Co., 29 Mo. App. 38; Glaze v. M'Million, 7 Port. (Ala.) 279; Prid v. Colcock, 1 Nott. M. (S. Car.) 592; Reynolds v. Shuler, 5 Con. (N. Y.) 323. (3) Where a written contract is clear and free from doubt, parol evidence is not admissible to vary its terms. This is the law as stated in Drug Co. v. Saunders, 70 Mo. App. 221.

*Frank Hagerman, Brown, Harding & Brown* for respondent.

(1) If there was any evidence to support the defendant's theory, there must be an affirmance because the order granting a new trial was placed upon the discretionary ground that the verdict was against the weight of the evidence. Millar v. Car Co., 130 Mo. 517, 529; Hewitt v. Steele, 118 Mo. 474; Bank v. Wood, 124 Mo. 72; Bed Co. v. Railroad, 148 Mo. 478, 486. (2) The true construction of the contract and that adopted by the parties was that Leavell had the right to use the fixtures until November 2, 1896, and properly transferred such right to Wollman. Depot Co. v. Railroad, 131 Mo. 291, 305; Patterson v. Camden, 25 Mo. 22; Gas Light Co. v. St. Louis, 46 Mo. 129; Jones v. DeLassus, 84 Mo. 545; Scott v.

Foster Woolen Co. v. Wollman.

Scott, 95 Mo. 318; Rose v. Carbonating Co., 60 Mo. App. 28; Belch v. Miller, 32 Mo. App. 387, 396, 398; Wald's Pollock on Contr. 403; Chicago v. Sheldon, 9 Wall. 50, 54. "Tell me," says Lord Chancellor Sugden, "what you have done under a deed, and I will tell you what that deed means." Attorney-General v. Drummond, 1 Dr. & W., 353, 366; affirmed on appeal, Drummond v. Attorney-General, 2 H. L. Cases, 837, cited in 2 Wharton on Cont., 653.

BROADDUS, J.—The plaintiff, a corporation, instituted this suit on the twentieth of May, 1898, which was tried at the January term of said court, 1900, a verdict had for the plaintiff and appellant for the sum of $400, which the court set aside. This verdict was set aside by the court on the ground that it was against the weight of the evidence; therefore, the sole ground for contention between the parties herein is as to the rightfulness of the action of the court in setting aside the finding of the jury for the reason assigned.

The plaintiff in its petition claimed that it was the owner of a great many articles, describing them in detail, of the value of $2,621.75 which the defendant wrongfully detained from it; that at various times prior to the filing of the petition, plaintiff had demanded said articles from the defendant which demands the defendant refused; and that defendant had converted them to his own use.

To this petition the defendant filed an amended answer, which, in addition to being a defense to plaintiff's cause of action, sets up a counterclaim; but as the finding was for the plaintiff, and the counterclaim, under the instructions of the court, could not be allowed if the jury should so find, that part of the defendant's answer is eliminated from the case. That part of the answer with which we have to deal after denying in general terms the allegations of the petition, sets up a special

defense, which, for a proper understanding of the case, we incorporate herein. It reads as follows:

"Defendant states that heretofore, on or about May 2, 1896, the Foster Woolen Company, since dissolved, by its written contract with one H. L. Leavell sold to said Leavell, a certain stock of goods and merchandise located in the premises at the southwest corner of Main and Seventh streets in Kansas City, Missouri, and in said agreement rented and leased to said Leavell, named therein as party of the second part, for a period of six months from said date, for rental of one dollar, the fixtures on the first floor of said premises, being the fixtures and property described in plaintiff's petition herein. That said written agreement, among other things, provided as follows, to-wit: 'The fixtures of the first floor of said Main street store are hereby rented to said party of the second part for six months, if he shall remain in business so long, for a rental of one dollar, the said party reserving the right to sell any of said fixtures not needed by the second party in conducting his business.' That thereafter, to-wit, on June 12, 1896, said Leavell sold to this defendant said stock of goods and merchandise, and also transferred and conveyed to this defendant all the right, title and interest acquired by said Leavell in and to said storeroom and the fixtures therein under the said contract between said Leavell and the said Foster Woolen Company, and that thereupon this defendant entered the possession of said storeroom and said fixtures for the purpose of continuing the business then conducted therein by said Leavell, being a sale and disposal at retail of the said stock of goods and merchandise so sold by said Leavell to this defendant. That this defendant, at the time of his said purchase from said Leavell, did not see or read the said contract between said Leavell and said Foster Woolen Company but was informed by said Leavell, his agents and representatives, and by J. Harvey Foster, the president of

said Foster Woolen Company, which made said contract with said Leavell, and by Ed. A. Krauthoff, the assignee of said Foster Woolen Company, that under said contract, between the said Foster Woolen Company and said Leavell this defendant would by virtue of the transfer to him by said Leavell of all of said Leavell's right, title and interest in and to said fixtures under said contract between said Foster Woolen Company and said Leavell, be entitled to keep and use said fixtures, being the property described in plaintiff's petition for the remaining period of six months expiring November 2, 1896.

"That relying on said representations and statements, and at the special instance and request of said president and said assignee, defendant purchased said stock and took possession of said fixtures, and has since, by reason thereof and the transfer to this defendant of said Leavell's right aforesaid, remaining in the possession of said fixtures for the purpose of continuing the business so commenced by said Leavell and acquired by this defendant."

The answer further alleges that some time in May, 1896, the Foster Woolen Company made an assignment of all its property to Ed. A. Krauthoff conveying all its property, including said fixtures, and that in August, 1896, said assignee sold said fixtures to said J. Harvey Foster, from whom plaintiff herein claims to have acquired title thereto, but alleges that plaintiff at all times had notice and knowledge of all the facts set up in his answer. It is also alleged that at the expiration of six months from the time of said sale to Leavell, to-wit, the second of November, 1896, the defendant offered and tendered said fixtures to the plaintiff who refused to take them.

The plaintiff's reply puts in issue the new matter in the answer.

There are certain indisputable facts of the case which are proper to be stated, to-wit: On and prior to the second of May,

1896, the Foster Woolen Company, not the plaintiff, but its predecessor, was doing business at Seventh and Main streets, Kansas City, Missouri, being known as the "Royal Tailors" and having a warehouse between Tenth and Eleventh on Walnut street in said city; on said date it sold to one H. L. Leavell its stock of goods and merchandise on the first floor of the premises on Seventh and Main streets and a sufficient portion of the stock of merchandise in the Walnut street house to make an aggregate invoice of $35,000 in value, on condition that said Leavell would assume certain of its indebtedness to the National Bank of Commerce. There are several conditions attached to the transfer which it is not necessary to notice at present. There was a provision in the written transfer of these goods which is the source of controversy here, to-wit: "The fixtures on the first floor of said Main street store are hereby rented to the second party for six months, if he shall remain in business so long, for a rental of one dollar, the first party reserving the right to sell any of said fixtures not needed by the second party in conducting his business." On the same day on which this transfer was made, the said Foster Woolen Company made an assignment of all its other property including the property in controversy to Edwin A. Krauthoff for the benefit of creditors.

On the twelfth of June next thereafter H. L. Leavell sold the stock of goods he had purchased as aforesaid to the defendant Wollman, the transfer of which was evidenced by writing of that date, which among other things contains the following: "In consideration of the premises aforesaid, I also transfer to said Morton Wollman all the right, title and interest which I acquired under said contract with said Foster Woolen Co. to said storeroom and the fixtures therein, and to all other rights which I acquired under said contract with said Foster Woolen Company." The articles denominated fixtures are not such in the sense of the term as used to distinguish that kind of prop-

erty from personal property generally, but they were merely many articles of personalty which were used as accessories for carrying on the business of the Foster Woolen Company, and no part of its stock in trade, and for the sake of convenience it will be well to continue to call them fixtures for the purpose of identification.

The defendant claimed that he had the right to the use of the fixtures from the second of May to the second of November, 1896.   Notwithstanding the language used in the transfer to Leavell by the Foster Woolen Company:   "The fixtures on the first floor of said Main street store are hereby rented to the second party for six months if he shall continue in business so long," the defendant contends that at the time he bought from Leavell and afterwards, Krauthoff, the assignee, represented to him that he would have the same right to the use of the fixtures as Leavell had; and that J. Harvey Foster, the president of said woolen company, admitted after he had bought that he had that right.   If it is to be held that defendant succeeded to the right of Leavell to the use of the fixtures, the cause will have to be affirmed; but if on the contrary he did not so succeed to the said rights of Leavell the cause will have to be reversed, for that is the only question in the case.

For a better understanding of the issue it should be stated, that Krauthoff, the assignee, sold all the property in his hands as such assignee, including the property in controversy, to the present plaintiff, which was organized on the third day of September, 1896, as a corporation with the same name as the defunct one, J. Harvey Foster, the president of the new corporation also, having bid it in for its benefit.   On the twenty-fifth of September, 1896, J. Harvey Foster, as such president of plaintiff corporation, demanded possession of the fixtures of defendant who refused to surrender them, claiming that he had the right, under the transfer from Leavell to him, to the use of

them for six months. On the same day plaintiff sued in replevin for the property in dispute, but after answer filed, the suit was dismissed and afterwards, as has been stated, this suit was instituted for conversion. On or about the second of November, 1896, the defendant tendered the property to plaintiff, but the tender was refused.

If it be conceded as proven, that Leavell, and Krauthoff the assignee, represented to respondent that he would have the use of the fixtures for six months from date of transfer to Leavell and a recognition of that right by Foster, it would not avail the respondent: for the reason that Leavell could only transfer such right as he got under his contract with the Foster Woolen Company. Foster as president of said company had no power to bind any one, as all the right and title of the company in the fixtures had been transferred to the trustee Krauthoff. It certainly can not be claimed that the assignee could bind the estate in his hands by any representations he could make, for he had no authority to do so. He, as such assignee, was not the agent of the company. The assigned property went to him to be sold and the proceeds distributed according to law and the order of the court where the assignment proceedings were pending. See State to use v. Scott, 42 Mo. App. 203. He could make no disposition of assigned property unless upon order of the court. See R. S. 1899, sec. 364. It is not claimed that such representation was an inducing cause for the purchase of the goods. In fact, respondent admits that at the time he bought from Leavell he contemplated moving the goods from the Main street building, but as he was required to pay three months' rent, paid in advance by Leavell, for the building he concluded to let them remain.

But the respondent places his defense upon the ground that the clause in the contract giving Leavell the use of the fixtures for six months if he should continue in business so long,

when read in connection with all the other parts of the instrument, creates a doubt as to its meaning; and that consequently what the parties did under it explains its meaning. It is true that, when a contract is doubtful and admits of different interpretations, the interpretation adopted by the parties will prevail, and the courts will sustain it. Drug Co. v. Saunders, 70 Mo. App. 221; Rose v. Carbonating Co., 60 Mo. App. 28; Belch v. Miller, 32 Mo. App. 387; Chicago v. Sheldon, 9 Wall. 50; Wald's Pollock on Contracts, 403.

Is the contract in question doubtful in its terms? It reads: "This agreement made between the Foster Woolen Company, party of the first part, and H. L. Leavell, doing business as Citizens Tailoring Company, party of the second part, witnesseth: The said party of the first part for the consideration hereinafter stated, hereby agrees to sell and deliver unto the second party, *or his assigns,* the following described personal property." Then follows a description and location of the goods and the consideration and how to be paid. And then: "As a further consideration, the second party agrees to sell to the first party, or order, on demand, any portion of the merchandise sold hereunder, to be selected by said second party, and being a fair average of the whole, at the rate of sixty per cent of the price stated for said merchandise on the invoice thereof above referred to. It is understood that said first party, or order, may at any time repurchase the property sold, on the following terms and conditions: By paying said second party the sum of one dollar in addition to the said sum of $19,500, with eight per cent from this date, together with all expenses reasonably incurred in selling said merchandise, less all amounts which have been realized by him out of said merchandise, accurate accounts of which shall be kept. The invoice to be made hereunder shall be attached hereto as a part hereof, and to identify the property sold. The fixtures on the first

floor of said Main street store are hereby rented to the *second party* for six months, *if he shall remain in business so long,* for a rental of one dollar, the first party reserving the right to sell any of said fixtures not needed by the second party in conducting his business."

We think it is clear that an inspection of said writing can not fail to impress the mind with but one conclusion, and that is, that it was the intention of the parties to limit the use of the fixtures to Leavell, and that the terms of the instrument with equal clearness expresses that intention. That clause of the contract providing for a resale of the goods to the Foster Woolen Company shows that it was in contemplation of said company to repurchase the goods from Leavell, in which event the fixtures would be on hand for again carrying on the business. The writing shows that there was a state of confidence existing between the parties thereto, which would under the circumstances account for the mere nominal rent which was charged for the use of the fixtures. And furthermore, the business was to be continued by Leavell at the same place and the use of the articles may have entered into the consideration in part for the purchase of the goods. Their use was certainly a matter of some value to him. It does not appear that the Foster Woolen Company had any motive for giving Leavell's assigns any benefit in the fixtures. It could not be interested in the goods after Leavell parted with them. There is nothing in the whole instrument to warrant any other conclusion than that the parties intended to limit the use of the fixtures to Leavell for six months if he should continue in business so long. As has been said, the instrument is unambiguous and we are not therefore referred to acts of the parties under it to construe its meaning.

The act of respondent in withholding the property from the plaintiff, the real owner, when demand was made upon him for it, is in law a conversion. See Rembaugh v. Phipps, 75

Mo. 422; Williams v. Smith, 153 Pa. St. 462; 26 Am. and
Eng. Ency. Law, 724. If the conclusions we have arrived at
are correct, the plaintiff and appellant was entitled to an in-
struction directing the jury to find for him for the value of the
property. It follows that the court committed error in setting
aside the verdict of the jury.

The cause is reversed, with directions to the circuit court
to reinstate the verdict and to enter judgment thereon for $400
with interest from date of the verdict. *Smith, P. J.,* concurs;
*Ellison, J.,* dissents.

### DISSENTING OPINION.

ELLISON, J.—In the foregoing opinion of my associates
it is stated that the contract clearly limits the use of the fixtures
to the time (not exceeding six months) defendant himself
should continue in business. That is tantamount to saying
that the contract as to the fixtures is made by its terms to be so
far personal that it could not be assigned. I have concluded
that that view is unsound, both from a consideration of matters
of fact disclosed on the face of the contract, and of the law as
applicable to those facts.

What is the reasonable interpretation of the terms of the
contract as disclosed by the face thereof? At the outset it
must be observed that the contract agrees to sell the goods to
Leavell *"or to his assigns."* And I think the balance of its pro-
visions must, in reason, necessarily relate to his assigns.

It was not only a contract for the sale of the goods, but it
prescribed the manner of selection, invoice and a special mode
of payment. It also attached conditions to the sale by providing
for certain privileges of repurchase by the vendor at stated
prices. If this contract had been assigned by Leavell before the
goods had been selected and delivered to him, the assignee

would, as a matter of course, have stood in his shoes and been bound to perform all his part of the contract. If bound to the burden of performing all the consideration moving from Leavell to the Foster Woolen Company, would he not be entitled to receive all the consideration moving from the Foster Woolen Company to Leavell? As assignee he certainly would be entitled to have the goods selected and delivered to him, and to pay for them by discharging the company's notes to the bank. Why then would he not be also entitled to the other consideration moving to Leavell, viz.: the privilege of using the fixtures for six months, if he continued in business so long. The latter clause of this sentence was evidently put in so that if, as contemplated by the contract Leavell *or his assignee* should be compelled to resell to the company, or if the business should otherwise become extinct at that place, then Leavell or his assignee could have no further use for the fixtures.

With a view of possibly making the matter appear with greater clearness I have put the case on the supposition that Leavell had assigned the contract before anything had been done under it. But an assignee or purchaser with notice, who purchases after the delivery of the goods, is equally bound by the terms of the contract and my observations are fully applicable to him.

Why should the right to the use of the fixtures not apply to the assignee? What reason is there for confining this part of the contract to the original purchaser? In consideration of the sale of the goods and of one dollar, the Foster Woolen Company had conveyed the use of the fixtures (in handling the goods) for a period of six months; it received the consideration for that length of time, then what possible difference could it make to the company whether Leavell or his assignee used them? There can be but one reason suggested and that is (as

above intimated) that the use was a personal trust reposed in Leavell and therefore unassignable. This presents a legal question which is easily answered in favor of the defendant.

The provision is a bailment of the fixtures; not gratuitous, but for a valuable consideration for a specified time. In such case the law is that the bailee has a special property in the thing bailed which is assignable and by which he can resist all trespassing intruders including the bailor. Bailey v. Colby, 34 N. H. 29; Vincent v. Cornell, 13 Pick. 294; Edwards on Bailments, secs. 369-372; Story on Bailments, secs. 394, 395; Lawson on Bailments, secs. 21, 41.

For the foregoing reasons I think the order granting the new trial should be affirmed.