JOHN W. WATSON, Respondent, v. RICHARD L. GROSS, Appellant.

Kansas City Court of Appeals, May 8, 1905.

1. **CONTRACTS: Adoption of: Effect.** Although a contract for sale of land only gave the vendee the right to cut and remove portions of the timber, yet the vendor by adopting his vendee's contracts of sale to various parties, made such contracts his own.

2. ———: **Forfeiture: Removal of Timber.** By a contract a purchaser of timber was to cut and remove the same by a given time. He cut the timber and removed it, with the consent of the landowner, to another part of the farm. *Held,* it was a fair conclusion that it was to remain until it suited the reasonable convenience to remove it and the timber was not forfeited to the landowner since the law is slow to enforce forfeitures.

3. **CONVERSION: Preventing the Removing of Timber.** Where a landowner prevents a purchaser from removing his timber he is guilty of conversion.

4. ———: **Right to Cut Timber: Definite Bounds: Instructions: Consideration.** Where the landowner sells the right to remove timber from a specific two acres of land the purchaser cannot cut timber beyond the two acres, and the fact that the landowner consents to his moving the timber to a certain other place on the farm is not a recognition of his right to cut outside the two acres; and an instruction predicated on the theory

that if the landowner knew the purchaser was appropriating the timber outside the two acres the verdict should be for the purchaser, is error, since there would be no consideration for the timber.

5. **CONTRACTS: Cutting Timber: Indefiniteness.** A contract selling the right to cut and remove portions of timber on the premises is to indefinite to be enforced in a court of law and can only bind the parties as far as they mutually agree under it.

Appeal from Atchison Circuit Court.—*Hon. Wm. C. Ellison*, Judge.

REVERSED AND REMANDED.

*L. J. Miles* and *J. P. Lewis* for appellant.

(1) The court erred in giving instruction numbered one for the plaintiff, and also erred on the trial in holding that plaintiff, under the contracts, was not required to remove the timber from the farm, but only from the particular two acres sold by Douglas to plaintiff. Johnson County v. Wood, 84 Mo. 489; McCullock v. Holmes, 111 Mo. 445; Torbet v. Jeffrey, 161 Mo. 645. Plaintiff, under his contract with Douglas, could acquire no greater right than Douglas had. He was bound to know what title Douglas had. (2) The court erred in its theory of the case that the respondent would have the right to leave the wood, indefinitely, on appellant's uncultivated lands, providing only that it was removed from the particular two acres by the 1st of March, 1903. This certainly was not within the spirit of the contract, or the purposes of the parties. (3) At most the respondent Watson and the other timber purchasers, were, so far as Gross was concerned, mere licensees, whose rights depended upon the contract of repurchase, irrevocable, perhaps, within the time permitted in that instrument, but not binding after the expiration of such time. What remained after their license to return for it had terminated, of necessity, belonged to the owner of the land who was in possession. Potter v.

Everett, 40 Mo. App. 152-161; Adams v. Liep, 71 Mo. 597; Washburn, Real Prop. (4 Ed.), 632. The license must be strictly followed and must be completed in the time given. 13 Am. & Eng. Ency. Law (1 Ed.), 544; Deland v. Vanstone, 26 Mo. App. 297. (4) The court erred in modifying appellant's instruction numbered one by adding the words "but evidence of any later verbal agreement (if any) concerning the amount of land may be considered by the jury." Such addition not only has no evidence whatever to support it, but ignores the question of knowledge by the appellant of such agreement. He certainly was not bound outside of the two acres mentioned in the repurchase contract.

*Hunt & Bailey* for respondent.

(1) Respondent sees nothing in the doctrine of license that appellant urges so strongly, that in any way applies to the case at bar. 2 Bouvier's Law Dictionary (14 Ed.), 45; 1 Washburn on Real Estate (1 Ed.), 298. A license furnishes a complete protection for all acts done under it. 13 Am. Eng. Ency. Law (1 Ed.), 546. And the license is construed most strictly against the licenser. (2) We wish, in this place, to again call the court's attention to the clause left out of the contract of repurchase of Gross from Douglas, which is as follows: "Except said Douglas and Douglas shall have the right to collect any remaining pay for such timber so sold." (3) He who wishes to reverse anything done by the court below, must show it to be wrong. Guinn v. Boas, 31 Mo. App. 131; State ex rel. v. County Court, 51 Mo. 521. And it is the duty of the party appealing, and not the other party, to see to the completeness of the transcript. In this case appellant wanted everything but a complete transcript, anything but a full and complete recital of the facts. Vaughan v. Railroad, 34 Mo. App. 141. Upon showing of appellant, respondent is entitled to an affirmance of the judgment below. Cass Co. v. Bank, 157

Mo. 133.   (4)   Every unlawful taking of chattels belonging to another, with the intention of converting them to the use of another other than the owner, and every unlawful act of taking which destroys or alters the nature of the chattels, and any wrongful assumption of a right to control or dispose of another's property, constitutes a conversion of property.   Allen v. McMonagle, 77 Mo. 478; Wainish v. Baker, 42 Mo. App. 439; Mfg. Co. v. Huff, 62 Mo. App. 124; Sharks v. Purdy, 11 Mo. 219; McLachlain v. Barker, 64 Mo. App. 521; Bank v. Brooks, 52 Mo. App. 364; McDonnell v. Marigold, 61 Mo. App. 291; Muller v. Gange, 84 Mo. App. 219.

BROADDUS, P. J.—This suit was commenced before a justice of the peace for the conversion of three cords of wood and two hundred posts.   On the trial in the circuit court plaintiff recovered judgment and defendant appealed.

In November, 1902, defendant entered into a contract with Daisy and Harlan Douglas to sell them a certain farm situated in Atchison county.   At the time of sale no money was paid but it was agreed that they would settle for the price of the farm in February, 1903, by payment of money and a mortgage on the land and other property.   It was agreed between defendant and the said Douglases that the latter had the privilege "to cut and remove portions of the timber standing on said premises" but that the same should remain the property of defendant and the proceeds be paid to him; but on final settlement for the price of the land the same was to be credited to the Douglases.   Between the two dates mentioned, and while defendant was in Oklahoma, the purchasers made some ten or twelve written contracts with different third parties for the sale of specified parts of the timber standing on the land.   When defendant returned from Oklahoma he found these numerous third parties cutting said timber.   In order to protect himself,

he entered into a new agreement with the Douglases, by
which the contract for the sale of the land was cancelled
and possession was returned to him. The contract of
cancellation recited the fact that the sales of timber had
been made by said Douglas to certain parties, mention-
ing their names and the number of acres specifically each
contract contained. This latter contract also provided
that the purchasers were to be allowed to remove the
timber purchased, but that such removal should be made
by the first day of March, next thereafter.

One George Fox and plaintiff held one of these con-
tracts for the purchase of timber; but as Fox sold out to
plaintiff the latter was the only interested purchaser of
the timber. Plaintiff testified that he had no knowledge
whatever of the contents of the contract of cancellation
between the defendant and said Douglas. It was shown
that Watson's contract had been destroyed by fire, con-
sequently he was compelled to resort to proof of its con-
tents; but it appears that the timber was to be removed
by the first day of March, and Watson stated that the
contract so provided.

The timber was removed from the land upon which
it was cut but was deposited in a gulch at another point
on the farm. Watson stated this was done with consent
of the Douglases with permission for it to remain there
indefinitely, or until he got ready to remove it. Watson
also testified that on one occasion Douglas said, in the
presence of defendant, that he gave Watson and Fox per-
mission to pile their timber in the gulch and that defend-
ant said: "That is all right. I have no kick coming
against Watson and Fox. It is those fellows on the other
side: Watson and Fox are all right." Douglas testified
that defendant consented that plaintiff's timber might
remain in the gulch until he got ready to remove it. He
also stated that his contract did not require him to move
his timber from the farm but only from the land where
it stood. During the fall of the year 1903 plaintiff un-

dertook to remove his timber from the gulch and was not permitted to do so by defendant.

One of the positions taken by defendant is, that the Douglases had no right under their contract for purchase of the land to sell and dispose of the timber thereon in the manner in which they did, and that the contract only contemplated that they themselves would have such right. But however that may have been, is of no consequence: for, by the contract of cancellation referred to, he adopted all the contracts for sale of timber to third parties; and they thus became as effective in law as if he had originally made them himself.

The only important question for review is, was the timber in question forfeited because it was not removed by the first day of March, 1903? We do not think that there was a forfeiture. As shown, it was removed from the land upon which it stood after being cut and deposited in the said gulch with permission of both Douglas' and defendant—if credit is to be given to the testimony of Watson and Douglas, which was a question for the triers of the facts. From the fact that the timber had been so removed from the land on which it was cut, and deposited in the gulch with defendant's knowledge and sanction, it is reasonable to infer that he was not insisting upon a strict compliance of the contract for its removal. Defendant expressed his consent to the deposit of the timber and he certainly understood that it was the intention of plaintiff to let it remain there until it suited his convenience to remove it. This seems to be a fair conclusion which any reasonable person would entertain from the circumstances. It was not shown that it was in defendant's way in any manner or that it occupied ground that he desired to utilize for farming purposes. In fact, from the kind of place in which it was deposited we are warranted in coming to the conclusion it was placed there for the reason that it would be out of the way of the owner of the land. Courts are slow to enforce forfeitures and will not do so, if there is any

reasonable excuse for doing otherwise. This is a well-established principle of law.

Under the circumstances the act of the defendant in refusing to permit plaintiff to take possession and remove the timber from the gulch was an act of conversion, [Sherman v. Commercial Printing Co., 29 Mo. App. 31; Foster Woolen Co. v. Woolman, 87 Mo. App. 658, and cases cited.]

There was evidence that some part of the timber in controversy was not cut from the two acres included in the contract from Douglas to the plaintiff and Fox, and which was transferred to the defendant at the time of the cancellation of the original sale of the land to the plaintiff. The original contract for the sale of the land to the Douglases, as stated, contained a permit for them to cut timber thereon. The language giving this right is without certainty of expression. It reads: "Second party may also cut and remove portions of the timber now standing on said premises, but the same shall remain first party's property and the proceeds shall be paid to him." The term "portions of the timber" is altogether indefinite. Acting under this clause in the contract, the Douglases, as stated, sold timber to various third parties; to which defendant objected and a controversy arose which resulted, as before stated, in a cancellation of the contract of sale. Therefore, the right of Watson, under his authority from Douglas, to cut timber, was a doubtful right, but there is no question but what he was acting in good faith. But so far as the plaintiff's right to cut timber from the two acres was concerned, it was ratified by the act of defendant in the said contract of cancellation.

But there is nothing in the evidence to show that defendant ratified the act of Douglas in permitting plaintiff to cut timber outside of said two-acre limit. Defendant's permission to plaintiff to deposit said timber in the gulch is not accompanied with any evidence tending to show that defendant knew that any part of it

was cut from other than the said two acres. He did not thereby recognize plaintiff's right to any portion cut outside of the two-acre limit. No court could say under the terms of the written contract of sale of the land what portion of timber the Douglases had a right to cut, consequently plaintiff, who had no greater right or title, failed to establish title to the timber outside of the two-acre limit. The title to the land being in defendant and the timber being a part thereof, it devolved upon plaintiff to show that he had parted with such title and that he, himself, was the owner. Therefore, instruction numbered three given for plaintiff was error as it was predicated upon the theory that if defendant knew that plaintiff was appropriating without objections the timber in excess of that which came off the two acres, their verdict would be for him. And it was also error for the same reason in the refusal of the court to give instruction numbered four asked by defendant.

We do not believe a party would be precluded from asserting his right to property as between himself and another upon the mere fact that he knew the other was appropriating such property and he made no objection at the time. There would be lacking one essential element in the transaction, viz: a consideration. As to strangers who might afterwards acquire such property for a consideration and in good faith, the law would be otherwise.

And perhaps it is not out of place to say that the clause in said contract for the sale of the land permitting the Douglases to cut some portion of the timber is too uncertain for enforcement in a court of law, and could be binding on the parties only in so far as they mutually acted under it.

For the error noted the cause is reversed and remanded. All concur.