| | |
|---|---|
| 4 | 313 |
| 4 | 350 |
| 5 | 317 |
| 12 | 9 |
| 12 | 10 |
| 12 | 17 |
| 6* | 177 |
| 6* | 182 |
| 4 | 313 |
| 24 | 113 |
| 32 | 1046 |
| 4 | 313 |
| 30 | 173 |
| 4 | 313 |
| f34 | 490 |
| 4 | 313 |
| 39 | 214 |
| 4 | 313 |
| 43 | 356 |
| 43 | 386 |
| 4 | 313 |
| f48 | 574 |

## E. BOHLMAN, RESPONDENT, *v.* S. COFFIN AND C. M. CARTER, APPELLANTS.

REFEREE.—A referee is an officer of the Court. He is clothed with important powers, and some weight must be given to his certificate, and some discretion allowed him in the manner of taking testimony and returning exhibits.

IDEM— CERTIFIED COPIES OF EXHIBITS BY.—When an original instrument is offered in evidence before a referee, and he makes a certified copy thereof, and files and returns the certified copy as an exhibit, such exhibit will not be disregarded except in peculiar cases.

CONSTRUCTION OF DEED.—To properly construe a deed it must be taken by "its four corners," and the intention of the parties, when discovered, must be carried out.

NOTICE.—Whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, so as to put him on inquiry into ascertaining their nature, operates as notice.

IDEM.—Actual and unequivocal possession is notice.

APPEAL from Multnomah County.

The facts are stated in the opinion of the Court.

*J. G. Chapman*, for Respondent.

*O. P. Mason and Whalley & Fechheimer*, for Appellants.

By the Court, McARTHUR, J.:

This is a suit to set aside a deed from Stephen Coffin to Charles M. Carter, of date August 20, 1870, and to compel the defendants to execute to the plaintiff a deed to lots two (2), three (3), and four (4), in block one hundred and fifty-six (156), in the city of Portland, in accordance with Coffin's covenant of further assurance, contained in the deed of date June 25, 1850, from Coffin, Lownsdale and Chapman, to Lownsdale, under which the respondent deraigns title. It appears that, on said last date, Coffin, Lownsdale and Chapman, as proprietors of the then town of Portland, by deed of conveyance, for a valuable consideration, bargained, sold and conveyed to Lownsdale, the lots aforesaid, and that the said deed contained the covenant of the said parties, grantors therein, that if they, or either of them, should obtain a patent from the United States for said premises, he, or they, would convey the same to said grantee or his assigns, by deed of general warranty.

Lownsdale continued in possession of said lots until June 15, 1851, when he conveyed one of them, numbered two (2), and delivered the possession thereof to one John M. Breck. This lot Breck transferred to Hart by deed dated February 5, 1859. Hart transferred the same to Robinson by deed dated July 5, 1859. Robinson transferred the same to Gault by deed dated December 15, 1859. Gault transferred the same to Burchard & Powers by deed dated July 12, 1869, and Burchard & Powers transferred the same to Bohlman, the respondent, by deed dated October 11, 1870. Lownsdale continued in possession of lots numbered three (3) and four (4), in said block, from the date of the deed from Coffin, Lownsdale and Chapman to him (L.) until February 25, 1858, when he transferred them to Breck. Breck transferred them to Delschneider by deed dated September 2, 1859. Delschneider died February 25, 1862, and his heirs, Frederick, Hannah and Rosa, continued in possession. On June 5, 1862, Rosa intermarried with D. E. Buchanan, and shortly afterward, by a suit in partition, it was decreed by the proper tribunal that Rosa take said lots

three (3) and four (4), in block one hundred and fifty-six (156), as her share of the estate of her deceased father. The same being thus decreed in Rosa Buchanan, she, together with her husband, sold and transferred the said lots to Hart by deed dated June 30, 1866, and Hart transferred the said lots to Bohlman, the respondent, by deed dated August —, 1866.

In 1862 Coffin acquired title from the United States, and the patent embraces the lots in controversy. He, by deed of August 20, 1870, conveyed to Carter all his right, title and interest in said lots and divers other lots and parcels of land in Multnomah County. The testimony clearly supports the conclusion that Lownsdale and those claiming under him, down to and including the respondent, have been in the open and notorious possession of the property described.

The first question of importance is as to whether Coffin was bound by the covenant in the deed to Lownsdale of June 25, 1850. That was a good and valid deed as between Chapman and Coffin as grantors, and Lownsdale as grantee, and we are of opinion that Coffin is bound by the covenant of further assurance therein contained, and that it was his duty to have executed to the assigns of Lownsdale under the deed, a deed of general warranty, after he obtained his patent from the general government. Before proceeding to discuss the other more important feature of the case, it is deemed necessary to pass upon two propositions contended for by appellants' counsel in relation to the sufficiency of the testimony.

It seems that when the referee was taking the testimony herein, W. W. Chapman was sworn as a witness. He was shown the original deed of Chapman, Coffin and Lownsdale to Lownsdale, and testified positively that he saw Coffin sign and execute the same. Thus much the interrogatories and answers prove beyond all contention. The referee had a copy of the deed made and filed as an "exhibit," and that together with all the other exhibits was returned to the Circuit Court under the certificate of the referee. The referee is an officer appointed by the Court,

and by his appointment is clothed with very important powers, and some weight must be given to his certificate, and some discretion must be allowed him in the manner of taking and returning testimony and exhibits. He acts under oath and is presumed to be qualified to discharge his office conscientiously, and it cannot be presumed that the copy he has returned is not a true copy. Indeed, counsel practically admitted it to be a true copy, but urged as this is a trial *de novo* the original ought to be here. It is true that it would be better in all cases coming here to be tried *de novo* for the original papers offered as exhibits to be sent up with the deposition, and in some cases it would be absolutely necessary; as where a question arises as to an erasure or an interlineation, in which case an inspection of the original might be necessary to properly pass upon the rights of the parties. But nothing of this kind is urged here, and this fact, taken in connection with the deposition of Chapman and the certificate of the referee, as well as the practical admission of its correctness by counsel in the argument, leads us to the conclusion that it would be improper to reject it.

There is also in this deed a defect, which the appellants' counsel claims overcomes the force of the covenant of further assurance. The language used is, "If the party of the second part obtains title from the United States they will convey the same to the party of the second part by deed," etc. We are called upon, therefore, to construe this part of the deed. This is not a difficult matter, for it is manifest from the context, from the subject-matter, and from the relation of the parties, that the use of the word *second* was a mere clerical error, and that the parties intended to use the word *first*. Under the technical canons of construction of the old common law this would not have defeated the deed or the covenant, still less would it do so when we apply the modern doctrine, which allows us to construe the whole deed together in order to discover the intention of the parties, and when discovered to carry out such intention. (*Ewing* v. *Burnet*, 11 Peters, 54.)

Taking the deed "by its four corners" the intention of

the parties is manifest. To hold that the covenant in this deed is not binding because the parties unintentionally used the words "second part" when it is apparent from the context that they intended to use the words "first part," would be as shocking to equity as anything we can well imagine. Common sense and common honesty forbid that we should do so. This covenant must stand.

The testimony conclusively shows that the respondent and those under whom he deraigns title were in the open and notorious possession of lots numbered three (3) and four (4) from the date of the original deed to Lownsdale down to the date of the deed from Coffin to Carter, and it also appears that the respondent's immediate grantors, Burchard & Powers, and those under whom they deraigned title, were in the open and notorious possession of lot numbered two (2) from the date of the original deed to Lownsdale down to the date of the deed from Coffin to Carter—Burchard & Powers conveying to the respondent after the date of said deed. All their equities passed with the land to Bohlman, and, as they affect his estate, he can assert them against Carter. Was this open and notorious possession notice to Carter, and if so, was his purchase from Coffin, with notice of the prior equities of the respondent and his grantors, a fraud upon his rights?

No equitable doctrine is better established than that laid down by Lord Chancellor Hardwicke in *Le Neve* v. *Le Neve* (2 Ldg. Cases in Equity, 160), over a century and a quarter ago, wherein it was held that the person who purchases an estate, although for a valuable consideration, after notice of a prior equitable right, makes himself a *mala fide* purchaser and will not be enabled, by getting in the legal estate, to defeat such prior equitable interest, but will be held a trustee for the benefit of the person whose right he sought to defeat.

It was held in *Barnes* v. *McChristie* (3 Penna. 67), that it was not necessary in any case to constitute notice that it should be in the shape of a distinct and formal communication, and it will be implied in all cases where a party is shown to have had such means of informing himself as

to justify the conclusion that he has availed himself of them. It has frequently been decided by the American, as well as the English Courts, that whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, so as to put him on inquiry into ascertaining their nature, will operate as notice.

Early in the present century it was held that actual and unequivocal possession was notice, not so much because possession is evidence of actual ownership, as because it is the duty of one who is about to purchase real estate to ascertain by whom and in what right it is held and occupied. And this doctrine is settled beyond dispute, both in England and in the United States.

Carter therefore bought with notice of the prior equities of Bohlman in lots numbered three (3) and four (4) and with notice of the prior equities of Bohlman's immediate grantors in lot numbered two (2), and his purchase was a fraud on their rights. As has already been decided, the equities of Burchard & Powers passed with the land to Bohlman and he can assert them.

It follows that Carter stands in the same position as his grantor. He has the legal estate, but he holds it as the trustee of Bohlman, who is the equitable owner.

The decree of the Court below must be affirmed.

Decree affirmed.