Argued October 6; affirmed in part; reversed in part
December 7, 1948

## SCHROEDER ET UX *v.* TOEDTMEIER ET AL.

200 P. (2d) 606

562

*Laurence L. Morley,* of Lebanon, and *Frank B. Reid,* of Eugene, argued the cause for appellants. On the brief were J. K. Weatherford, Jr., of Albany, Morley & Thomas, of Lebanon, Reid and Bartle, of Eugene, and S. Ellis Scoville, of Brownsville.

*Courtney R. Johns,* of Albany, argued the cause for respondents. On the brief were Goode & Johns, of Albany.

Before ROSSMAN, Chief Justice, and BELT, BAILEY and BRAND, Justices.

BRAND, J.

The complaint alleges and the record proves that the plaintiffs are the owners of three tracts of land described in the complaint. The controversy relates to the asserted rights of certain of the defendants in the timber standing and lying on portions of plaintiffs' land. The complaint alleges that the plaintiffs are the owners of the following described real property in Linn County, Oregon, to wit: Tract 1—The east half of the northeast quarter and the east half of the west half of the northeast quarter, all in Section 32, T. 14 S., R. 1 W. of the W. M., containing 120 acres, and tract 2, described as follows: The southeast quarter of the southeast quarter of Section 29 in T. 14 S., R. 1 W. of the W. M., containing 40 acres. The plaintiffs are also the owners of a third tract of 138 acres which is described in the complaint. The defendants concede that they have no claims against tract 3 or the timber thereon "except for a dispute over right of way." Tract 3 is an irregular area lying north, northeast and east of tract 2.

We will first trace the title of the three tracts as to the land alone, reserving for later consideration the rights in the timber. Tract 1 was originally owned by the defendant Toedtemeier, who, by deed signed by himself and wife, conveyed the land to Trachsel and wife. The deed was dated 30 July, 1943. The Trachsels retained title to the land until they sold it to the plaintiffs on 3 August, 1946. Tom Edmison was the original

owner of tract 2. He and his wife conveyed that land to Trachsel and wife on 30 December, 1943. The Trachsels conveyed to the plaintiffs by deed of 3 August, 1946. The Trachsels were the original owners of tract 3 and retained ownership in that land until it was sold to the plaintiffs by deed of 3 August, 1946. It thus appears that so far as the land itself was concerned, the Trachsels owned all three tracts and conveyed the same by a single deed to the plaintiffs on 3 August, 1946.

We next consider the ownership of the timber on tract 1. The deed of 30 July, 1943 by which Toedtemeier and wife sold tract 1 to the Trachsels contained the following provision:

> "Excepting, however, all merchantable timber thereon, providing all such timber is removed on/or before June 15, 1945, and excepting therefrom, a 20 foot right-of-way across said premises to remove said timber therefrom, and to remove timber from Tom Edmison tract of land, for a period not to extend beyond June 15, 1945."

Unless there was some valid extension of the right of the Toedtemeiers to remove the timber as provided in the deed of 30 July, 1943, it is apparent that his interest in the timber had terminated more than a year before the plaintiffs acquired the property. The defendants contend that the Toedtemeier rights were extended beyond 15 June, 1945 by virtue of the Soldiers' and Sailors' Relief Act of 1940. U. S. C. A., tit., 50 app., §§ 501-590. It is alleged and admitted that Toedtemeier entered the military service of the United States and remained therein until December, 1945, and that by reason of such military service he was prevented from removing the bulk of the timber from tract 1. Based

upon the Soldiers' and Sailors' Relief Act, it is alleged that:

"* * * the Defendant, Norman Toedtemeier, and his successors and interests, the Defendants, William Bauman and M. Y. Barnes, are entitled to an extension of time for the performance of the provisions of the contract alleged above between the Defendant, Norman Toedtemeier and Charles W. Trachsel and Grace H. Trachsel, husband and wife, for an additional period of 19 months from the expiration of the said original contract by reason of the fact that the said Norman Toedtemeier was prevented from performing the said contract because of his subsequent military service for a period of 19 months as above alleged and set out."

Defendants do not rely solely upon the effect of the federal statute. They also allege in paragraph IV of the amended answer:

"That the said Defendant, Norman Toedtemeier, urged upon the said Charles W. Trachsel and wife that his rights in said timber had not expired because of the provisions of the Soldiers' and Sailors' Relief Act, a Federal Statute of 1940, and further asserted that his privileges under said Act entitled him to an extension of time in which to remove the said timber. That in consideration of such military service and inability of Norman Toedtemeier to remove the said timber arising from such military service, and for other valuable consideration, the said Charles W. Trachsel and Grace H. Trachsel, his wife, did grant unto the said Norman Toedtemeier an extension of time to remove said timber to and including October 1, 1947."

■■ The answer of the defendants does not state the date at which the alleged extension was agreed upon, but the agreement, if made, must have been subsequent to December, 1945. Both Toedtemeier and Trach-

sel appear to have been under the impression that the Soldiers' and Sailors' Relief Act would in fact extend the time within which Toedtemeier would be entitled to remove the timber, but we are unable to find any provision in that statute which grants any such extension in a case of this kind, nor have counsel been more successful. The Soldiers' and Sailors' Relief Act was designed to "suspend enforcement of civil liabilities in certain cases, of persons in the military service." It did not affect property rights as such. Defendants appear to rely upon Section 525 of the act which relates to statutes of limitation. That section has no application in this case. Unless, therefore, the Toedtemeier rights were extended by valid agreement, they expired on 15 June, 1945.

In paragraph IV of the defendants' answer, quoted supra, it is alleged that Trachsel and wife did grant to Toedtemeier an extension of time to remove the timber, to, and including 1 October, 1947. Trachsel testified unequivocally that he never, orally or in writing, granted any right to remove the timber beyond 15 June, 1945. He also testified that he had never granted any extension of time as to the right-of-way for the removal of timber and that he never received any consideration for such an alleged extension. The testimony of Toedtemeier is equivocal and unsatisfactory upon this issue. We quote the following from his testimony:

> "Now, then, after you returned from the service, did you ever have any conversation with Mr. Trachsel relative to this timber?
>
> "A  Well, the one and only time I talked to him, he come into my restaurant one evening.
>
> "Q  Where was that?

"A At Brownsville, Oregon, and maintained I had sold this timber.

"Q Which timber?

"A The 120 acres to Bauman. It seems like they met, and Trachsel had kind of argued with him about the ownership of it; when he came in to see me, he came in and apologized to me. He started to raise a fuss and had no right. He said he didn't realize I had rights in there at the time because he didn't make the dealings until he looked at the deed his wife had made. He left it up to her."

Toedtemeier testified that Mr. Barnes was in the restaurant at the time of the conversation with Trachsel. We again quote from Toedtemeier's testimony:

"Q Was there any conversation at that time between Mr. Trachsel and yourself relative to your sale—any rights you had in the property?

"A Yes, he apologized to me. He said he was sorry, but it was just like a bombshell to him. He thought the timber went with the place, and he said so far as I was concerned, to go ahead and my time was extended, as I explained to him as near as I could find out myself.

"Q Was there any discussion as to the length of time that you had to get it out, that is, between you and Mr. Trachsel at that time?

"A No, there wasn't no set date to quit, but he said I could go ahead and get it; it was agreed it would only take a year or so when I got in there."

This conversation occurred according to Toedtemeier, "just before June", 1946, and shortly after Toedtemeier had sold the timber to Bauman. Upon cross-examination, Toedtemeier testified as follows:

"Q You reported this conversation with Trachsel in your restaurant about June, 1946, in Browns-

ville, Oregon. During that conversation did Trachsel grant you any extension of time or give you an extension for removal of this timber?

"A He just came in and apologized that he even started the action, that it was like a bombshell to him. He didn't realize I owned it until he went and checked up.

"Q You never paid him anything for an extension, did you? at that time?

"A No.

"Q You are relying on your previous rights you had pursuant to the instruments that you have been introducing here, is that right?

"A On the 120, yes."

██ It will be observed that the answer alleges that Trachsel and his wife extended the time for the removal of timber, to and including 1 October, 1947. There is no evidence from any person that the alleged extension ran to that date. As we have seen, Toedtemeier testified that no date was set. A search of the record to determine the source of the date, 1 October, 1947, reveals the following facts: Sometime prior to 8 May, 1946, Trachsel purported to sell the merchantable timber on a portion of tract 1 to William H. Bauman. The instrument of transfer, if any, was not introduced in evidence, but the plaintiffs did introduce a contract of 8 May, 1946, between the defendant Bauman and the defendant Barnes. By that contract Barnes agreed to purchase, and Bauman to sell, all of the merchantable timber now on the east half of the northeast quarter of section 32 in Township 14 S., Range 1 west of the Willamette Meridian, Linn County, Oregon, "together with a 20 foot right-of-way across the said premises to remove said timber therefrom and

to remove timber from the Tom Edmison tract of land.'' The description in the contract between Bauman and Barnes covers 80 acres of tract 1, but omits from the contract 40 acres of that tract. In the contract it was provided that Barnes might have the right to cut and remove the timber up to, but not later than, 1 October, 1947. It is apparent that in drawing the answer in which defendants alleged that the Trachsels had granted Toedtemeier an extention to and including 1 October, 1947, they merely appropriated that date because it was found in the Bauman-Barnes contract. The defendant Barnes was called as witness to corroborate the alleged agreement for an extension of time between Trachsel and Toedtemeier. He testified that he never heard Trachsel tell Toedtemeier that he could have additional time to take the timber out. The trial court who heard the witnesses found against the defendants upon this issue. We think that evidence establishes that Trachsel, owing to unfortunate legal advice, honestly believed that Toedtemeier was entitled to an extension of time by reason of the provision of the Soldiers' and Sailors' Relief Act, and that he indicated that belief to Toedtemeier, but that he did not at any time make any agreement, either written or oral, gratuitous or for valuable consideration, to extend the time for the removal of the timber, either to 1 October, 1947 or to any other date. It follows therefore, that the only right which Toedtemeier had to remove the timber expired on 15 June, 1945, and that the only right which Toedtemeier had to a 20 foot right-of-way across tract 1 also expired on 15 June, 1945. Since Toedtemeier lost his right to the timber in tract 1 on the last mentioned date, he could not thereafter convey any interest in that tract or in the right-of-way to

Bauman or Barnes. Barnes testified that after the conversation at the restaurant, he talked with Trachsel who told him that he could cut the timber belonging to Toedtemeier, that Toedtemeier had a right to sell it, and that he, Barnes, could go ahead and log it out, and that accordingly he entered into the contract with Bauman. Trachsel, in rebuttal, testified as follows:

"Q Did you ever tell the defendant Toedtemeier, Barnes, or Bauman to go ahead and log off of tracts 1, 2, or 3?

"A I did not.

"Q I am referring to the time after June 15, 1943?

"A The answer is still no."

In any event, Trachsel is not a party to this suit, and even if he, in substance, gave Barnes incorrect legal advice, and if Barnes acted upon it, the plaintiffs are not responsible therefor. Thus far, we have arrived at the conclusion that Trachsel had a right to sell tract 1 to the plaintiffs, and to convey to them both land and timber thereon.

The plaintiffs knew that Toedtemeier claimed the right to remove the timber on tract 1. The proof lies in the fact that the Trachsels first tendered to the plaintiffs a deed excepting the merchantable timber from tracts 1 and 2, "provided all such timber is removed on or before May 11, 1947". The exception also covered the 20 foot right-of-way for a period not to extend beyond 11 May, 1947. The plaintiffs refused to accept the tendered deed because of the exceptions with reference to the timber and right-of-way. Upon the refusal of the plaintiffs to accept the tendered deed

another deed was executed which contained the following provision:

> "And Charles W. Trachsel and Grace H. Trachsel, husband and wife, the grantors above named, do covenant to and with the above named grantees, their heirs and assigns, that they are lawfully seized in fee simple of the above granted premises, that the above granted premises are free from all encumbrances, SAVING AND EXCEPTING, however, the rights, if any, of third persons claiming through the grantors and/or Norman Toedtemeier to remove timber from the first two of the three tracts of land above described, and to a right of way across the above described lands for the purpose of removing such timber, which said rights, if any, are disputed; provided, however, that it is the intention of grantors, and they do hereby, grant, bargain, sell and convey to the grantees, their heirs and assigns, all of the right, title and interest of the grantors in and to said timber, and said right of way as of this 3rd day of August, 1946 * * *"

■ The plaintiffs therefore knew that in purchasing Trachsel's interest in land and timber, they were buying a law suit, so far as the timber was concerned, but their knowledge of the claims of Toedtemeier and his successors in interest, is immaterial if the claims were invalid. Since we have held that the Trachsels had a legal right to sell both the land and timber, we must also hold that the conveyance to the plaintiffs gave them title to both. The testimony quoted below, with particular reference to tract 2, satisfies us that in any event the plaintiffs never knew of any alleged agreement extending the time for removing the timber on tract 1. The title of plaintiffs in tract 1 is free of any claim, either to timber or to right-of-way across that tract.

We next approach the contest concerning tract 2 which was originally owned by Tom Edmison. The defendants introduced in evidence as exhibit 2, a piece of tablet paper on which, in pencil, the following appears:

"June 5, 1943

"I hereby sell to Norman Toedtemeier all merchantable timber on my ranch located on Brush Creek consisting of 40 acres of 2nd and old growth timber for the price of $450.00 and with the time to remove same to be Oct. 1, 1948 on or before, and Norman Toedtemeier is to pay all right of way costs to county road."

The instrument bears the purported signature of Tom Edmison. The plaintiffs question the execution of this instrument and particularly its execution on the purported date, and also contend that it is insufficient to pass title to standing merchantable timber. We shall assume for the present that the instrument was executed on the date which it bears, by Tom Edmison, and was sufficient to convey to Toedtemeier the merchantable timber on tract 2, notwithstanding the informality of the instrument. The instrument was not acknowledged or recorded. On 30 December, 1943, Edmison and wife, by a formal instrument, conveyed to Trachsel and wife all of tract 2. In this deed there was no exception or reference to any previous sale of timber to Toedtemeier. The deed was duly acknowledged and recorded.

■ The negotiations for the purchase and sale of tract 2 were between Edmison and Mrs. Trachsel in the absence of her husband. When the husband later saw the deed, he may well have assumed that there was no outstanding interest in the timber. Toedtemeier testified that he showed exhibit 2 to Mrs. Trachsel. Mrs. Trachsel did not testify. It would be proper therefore

to conclude that Mrs. Trachsel personally knew the contents of the instrument of 5 June, 1943, exhibit 2. If Mrs. Trachsel had actual knowledge, her husband would no doubt be charged with knowledge, even though he did not know in fact of the time limit for the removal of the timber. Whether Trachsel did or did not know of the terms of the writing of 5 June, 1943, with its provisions for the right of removal until 1 October, 1948, is not of direct importance. The question before us concerns the knowledge of the plaintiffs concerning that instrument, but it is clear that if Trachsel did not personally know of the existence of the instrument he could not have told the plaintiffs of it. The fact that Trachsel might have constructive knowledge through his wife would not charge the plaintiff with knowledge of the facts. Trachsel testified frankly and accurately. The trial court believed him, and we find his evidence persuasive. He testified that it was from Mr. Barnes that he learned that Toedtemeier still felt that he had a right to the timber. Barnes did not become interested in the transaction until the spring of 1946. Trachsel testified:

"A I had learned that Mr. Toedtemeier intended to remove the timber, and I was surprised because I had never thought of the service record entering the picture, and so as a result of that information I had contacted an Albany attorney and was advised that the service record would apply, so consequently I saw Mr. Toedtemeier and asked him his intentions, and he said he intended to remove the timber, and I further asked him what he wanted in the event to terminate his rights, if any still existed, and he gave me a figure that I regarded as excessive, beyond which I could pay, and I let the matter drop. That was the only conversation I had about the matter.

" * * * *

"A  I understood that the same arrangements existed on it as it existed on the 120, that is to the effect that he was entitled to remove the merchantable timber up til 1945.

"Q  You didn't know what the agreement was, but you knew there was some kind of an agreement, is that correct?

"A  Well, no.  I knew the agreement was to the effect that he had timber rights—removal rights—until the same time that was designated for the timber on the 120."

The evidence affirmatively shows that the plaintiffs did not know of the instrument of 5 June, 1943 until long after they had purchased tract 2 from the Trachsels.  The sources of information to which the plaintiffs had access were Trachsel, Toedtemeier and attorney Cornell.  Trachsel testified as follows:

"Q  When you sold this property to the plaintiffs, Mr. and Mrs. Schroeder, did you have any conversation with them regarding the possible rights of Mr. Toedtemeier, Bauman, or Barnes?

"A  Yes, sir.

"Q  What was that?

"A  Why, I explained to them that there was a contract for the removal of timber to expire at the 1945 date, but that I understood that it had been prolonged because of the service record of Mr. Toedtemeier.

"Q  You explained that Mr. Toedtemeier might possibly have an interest you so testify.  Was it your understanding that there was any possibility of an interest other than through Mr. Toedtemeier's service record?

"A  No, I was personally quite surprised when the service record entered the picture because I thought the period was over.

"  *  *  *

"A It was explained to Mr. Schroeder that the contract which was to have expired in 1945 was possibly extended because of this service record, and that Mr. Toedtemeier intended to take the timber off on the basis of it."

The plaintiff, Norman Schroeder, testified as follows:

"Q When you bought the property from Mr. Trachsel, were you aware of any interest in the property on the part of Mr. Toedtemeier?

"A Yes.

"Q What did you know about that?

"A When we engaged Mr. Cornell to help out with the making out of the deed, we met in Mr. Cornell's office, Mr. Trachsel and my wife and I, and he explained that he had been informed to give an extension of time on the timber rights held by Mr. Toedtemeier.

"Q Why?

"A Because Mr. Trachsel said that an attorney had advised him that Mr. Toedtemeier had an extension of time by reason of his service record.

"Q Was there any other reason given?

"A No.

"Q Now, was that with regard to tracts 1, 2, 3, or what part thereof?

"A Only Tracts 1 and 2.

"Q Tracts 1 and 2 were the same mentioned together?

"A That's right.

Schroeder testified further that he had never seen the writing of 5 June, 1943 and had never granted any extension as to any tract. Schroeder also testified

that he had a conversation with Toedtemeier. We quote:

"Q Did you have any conversation with him when you met him?

"A Yes.

"Q What was that?

"A We wanted to know if we could see the contract that he had made with Mr. Trachsel.

"Q And what did he say?

"A He said he thought he had it somewhere about the house, but it was on record in the County Court House.

"Q Was there any other conversation?

"A Not pertaining to the property.

"Q Did he assert a claim or interest in either tracts 1, 2, or three to you?

"A At that time he claimed he had reserved the timber on Tract 2, and sold all rights and interest to Tract 1."

Schroeder testified that at the time of that conversation Toedtemeier claimed the timber on tract 2. He testified further:

"Q Before you accepted the deed you never made any special effort to go around and see Norman Toedtemeier before you accepted the final deed?

"A Yes.

"Q Did you see him before you accepted it?

"A Yes.

"Q You are sure of that?

"A Yes.

"Q You did talk to him and found out what his rights were before you accepted that deed?

"A I talked to him, and he told me what his rights were. I didn't see that paper at the time.

"Q Toedtemeier told you at that time that he had the right to remove the timber on Tracts 1 and 2?

"A Yes, sir.

"Q Did you ask him the basis of those rights?

"A Yes.

"* * *

"Q Mr. Bailiff, will you please show him Plaintiff's Exhibit B. Did he show you that deed? (i. e., the deed Toedtemeier to Trachsel re tract 1).

"A I believe he did.

"Q. What is the date to which the right to remove timber is reserved in that deed?

"A June 15, 1945.

"Q Did he offer any explanation as to why his claim had not expired on June 15, 1945?

"A He said it had been extended by the G. I. bill of rights.

"Q And that was all the conversation?

"A Yes.

"Q When you talked to him he explained that was his claim to this property?

"A That's right.

"REDIRECT EXAMINATION

"Q Will you hand Defendant Exhibit No. 2 for identification. Mr. Schroeder, have you ever seen that instrument?

"A Never.

"Q Are you certain of that?

"A Of this, yes.

It was stipulated that Margaret Schroeder, if called, would testify as her husband had testified. The witness Cornell testified that he had assisted as an attorney in the sale of tracts 1, 2 and 3 by the Trachsels to the plaintiffs Schroeder. He stated that during the discussion between Trachsel and the Schroeders, the

interest of Toedtemeier in tracts 1 and 2 was discussed. We quote:

"Q  Was it indicated the nature of those rights?

"A  I don't believe that it was discussed and any definite decision reached.  It was mentioned that he would have the right to remove the timber, or that there might be a right to remove the timber from those tracts.

"* * *

"Q  Was any explanation made or conversation had as to why Mr. Toedtemeier had a claim to this property beyond June 15, 1945?

"A  Yes, I believe it was understood that if that right was extended, it was extended by reason of the Soldiers and Sailors Civil Relief Act."

We now turn to the testimony of defendant Toedtemeier for its bearing upon the question of the knowledge of the plaintiffs, at, or prior to their purchase as to the contents of the informal writing of 5 June, 1943. He testified that the plaintiffs came to him in December, 1946.  We quote:

"A  They introduced themselves and told me who they were, and they said people were logging up there and they said they were having trouble with their contracts and asked me to help them out with my contracts on timber, and I looked and gave them all the contracts I had.

"Q  Did they ask you about your rights in the timber?

"A  No, they said they wanted to know just what rights there were, and that is all.

"Q  Did you tell them at that time what rights you had in the timber?

"A  Absolutely.

"Q  What did you tell them?

"A  I told them I had the—that the 40 was

mine, and the 120 I sold to Bauman, and I gave them the carbon contracts of the terms.

"Q The contract you had with Bauman?

"A That's right.

"* * *

"Q On the 40 acres, Tract No. 2, you claim your right through this written instrument that has been introduced here as Defendants' Exhibit 2, is that right, that you just identified here on the stand as being Tom Edmison's contract and Defendants' Exhibit 2? You base your entire claim on any interest in the 40-acres tract designated as Tract 2 on the sketch here, on that instrument there, is that right?

"A Yes, and also the right-of-way from this I have with Trachsel.

"* * *

"Q Where has that writing been all this time?

"A My ex-wife had this in with a lot of my papers.

"Q Did you show this to the Schroeders when they were up there around Christmas time that you testified about?

"A No, because I never had all my papers there."

The witness testified that he got the instrument of 5 June, 1943 from his ex-wife who had it in her hope chest in Linn County.

"Q In this conversation you had with the Schroeders at your house, they were trying to find out, weren't they, what rights, if any, that you had, isn't that true?

"A That's right.

"Q And what right, if any, that Barnes or Bauman had through you?

"A They wanted to know if I sold to Barnes and Bauman. That meant they knew I owned the timber. I explained that to them.

"Q You say they admitted that you owned the timber. They admitted you were making some claim. They didn't admit you actually owned it, did they?

"A They absolutely did.

"Q On what basis?

"A That they bought it that way, that I owned it.

"Q What were they getting the papers for?

"A To quiet title; they explained they had to have them to quiet title to it.

"Q They wanted to see what your claim was based on, and they were trying to get your papers to see.

"A It seems to me like it."

Toedtemeier admitted that the Schroeders had never given him any extension for the removal of timber. The evidence satisfies us that the plaintiffs were without actual knowledge of the provisions of exhibit 2 which gave to Toedtemeier the right to remove the timber from tract 2 until 1 October, 1948. It remains to be determined whether the plaintiffs were chargeable with constructive knowledge.

We hold that exhibit 2, however informal, was sufficient to convey to Toedtemeier an interest in the timber on tract 2. Edmison, the grantor, does not challenge the title of his grantee. Toedtemeier went into possession as much as one can who owns the timber but not the land. He entered the premises and cut poles therefrom, and he paid the purchase price. The defendants rely upon the following legal propositions:

"The sale of standing timber with the right of the buyer to cut and remove the same within a specified period of time, is a sale and not a mere license, and a purchaser with notice of an outstanding un-

recorded title to said timber takes title to the land subject thereto.

"If subsequent purchaser has information putting him on inquiry as to outstanding unrecorded title and reasonable inquiry would lead to full knowledge thereof, and he neglects to make inquiry, he takes title charged therewith." Belt et ux. v. Matson et al, 120 Or. 313, 252 P. 80; Williams v. Barbee, 165 Or. 260, 106 P. (2d) 1003; Murray v. Wiley, 169 Or. 381, 127 P. (2d) 112, 129 P. (2d) 66.

■ Both propositions correctly state the law. A bona fide purchaser of land without notice of an unrecorded deed to the timber will take free and clear of such encumbrance. 34 Am. Jur., Logs and Timber, § 19, p. 503. It is argued, however, that the plaintiffs knew that the defendants had claims against the timber and that they were therefore put on inquiry. That contention also is supported by the authorities. 55 Am. Jur., Vendor and Purchaser, § 697, p. 1075. However, it is also held that:

"All that is required of a party who is put upon inquiry is good faith and reasonable care in following up the inquiry; if due and diligent inquiry is made and notwithstanding it no knowledge of the outstanding interest is acquired, the purchaser will have performed his full duty and will not be charged with further notice * * *" 55 Am. Jur., Vendor and Purchaser, § 703, p. 1080.

This court has held that if reasonable inquiry by a purchaser would give information as to an outstanding unrecorded deed, and such inquiry is not made, the purchaser will take title subject to the unrecorded deed. *Murray v. Wiley*, supra.

■ The plaintiffs had notice concerning a claim of Toedtemeier against the timber on tract 2. They

were put upon inquiry. The question therefore, is whether they made reasonable and diligent inquiry concerning the nature of that claim. The plaintiffs inquired of their attorney and of Trachsel but they received no knowledge of the existence of exhibit 2 or of the terms thereof. Since the plaintiffs knew that Toedtemeier was the claimant, it became their duty in the exercise of reasonable diligence, to inquire of him also. If, prior to purchase, the plaintiffs made inquiry of Toedtemeier and received no information concerning exhibit 2 and were told only of a claim under the Soldiers' and Sailors' Relief Act, they would be entitled to rely on the statements of Toedtemeier and might reasonably presume that he had stated to them the entire basis of his claim.

> "* * * If Tompkins had pretended to inform plaintiffs the terms of the contract with Moore, plaintiffs would have had a right to rely on the statements of Tompkins, and the latter would have been presumed to have claimed all he was entitled to in his representations to the plaintiffs: Richards v. Snider et al., 11 Or. 197 (3 Pac. 177)." Belt et ux v. Matson, supra.

The case comes down to a question as to the time when Schroeder talked with Toedtemeier. We have already quoted the testimony in which Schroeder positively asserted that he talked with Toedtemeier before he purchased the property. But, after careful consideration, we have concluded that the plaintiff is in error as to the time of this conversation. The testimony of the plaintiff himself confirms the testimony of Toedtemeier to the effect that the first meeting between Schroeder and Toedtemeier was after Schroeder had purchased the property on 3 August, 1946. At the trial,

which was held in April, 1947, Schroeder testified as follows:

"Q Do you know the defendant Norman Toedtemeier?

"A I do now.

"Q When did you first meet him?

"A Well, the exact date, I don't know.

"Q Well, about when?

"A It has been several months ago; I don't exactly know whether it will be four [before] the first of the year or not."

◼ Schroeder testified that he had a second conversation with Toedtemeier at the latter's home, which conversation was subsequent to the filing of the pending suit on 19 December, 1946. He was then asked, "Q. Had that suit been filed when you had your first conversation with Toedtemeier? A. I don't know." Toedtemeier fixes the date of the first conversation with the plaintiffs as about Christmas time, 1946. We are forced to the conclusion that the plaintiffs did not contact Toedtemeier until after they had purchased the land. The Schroeders are certainly chargeable with knowledge that the Toedtemeier claim to the timber on tract 2 was not derived from the reservation in the deed to tract 1, and reasonable investigation required specific inquiry of Toedtemeier concerning the nature of his claim to the timber on tract 2. If such inquiry was made at all it was not made until after the plaintiffs had purchased the property. They were therefore chargeable with knowledge of the outstanding interest of Toedtemeier in the timber on tract 2.

◼ It will be recalled that the Edmison conveyance granted to Toedtemeier the right to remove the timber until 1 October, 1948. The case was not heard in this

court until 6 October, 1948. The circuit court, by its final decree of 28 July, 1947, enjoined the defendants from entering tract 2. The defendants were thereby erroneously prevented from exercising their rights of removal for the entire period from 28 July, 1947 to 1 October, 1948. The defendants are therefore entitled to such an extension of time as may be necessary for the removal of the balance of the timber on tract 2. Such extension will not exceed in duration, the time during which they were erroneously deprived of their rights by the injunction. *Mallett v. Doherty,* 180 Cal. 225, 180 P. 531, 15 A. L. R. 19; *Fish v. Murrell,* 219 Ky. 153, 292 S. W. 1096; *Robertson v. Little,* 200 Ala. 582, 76 S. 940; *Cooksey v. Hartzell,* 120 Ark. 313, 179 S. W. 506; *Halla v. Rogers,* 176 Fed. 709 (C. C. A., 9th), 34 L. R. A. N. S., 120; 34 Am. Jur., Logs & Timber, § 36, p. 515; 54 C. J. S., Logs & Logging, § 19, p. 712.

The decree of the lower court is affirmed as to tracts 1 and 3 and reversed as to tract 2. The right of removal of the timber on tract 2 is extended for a reasonable period, not to exceed in duration the period from 28 July, 1947 to 1 October, 1948. Neither party will recover costs.