Argued January 6, reversed and remanded February 4, petition
for rehearing denied April 29, 1953

# SEGUIN ET AL. v. MALONEY-CHAMBERS
# LUMBER COMPANY

253 P. 2d 252
256 P. 2d 514

Orval N. Thompson, of Albany, argued the cause for appellants. On the brief were Weatherford and Thompson, of Albany.

Courtney R. Johns and Melvin Goode, of Albany, argued the cause and filed a brief for respondents.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

PERRY, J.

This is a suit to quiet title to the following described property:

"The Southeast quarter of the Northeast quarter, and the Southeast Quarter of Section Sixteen (16), Township thirteen (13) South, Range Two (2) West of the Willamette Meridian, except the Northeast Quarter of the Southeast Quarter of the Southeast Quarter, and the South Six (6) acres of the Northwest half of the Southwest Quarter of the Southeast Quarter of said Section Sixteen (16)."

The plaintiffs are Ed Seguin, as an individual, and Joe M. Crahane, Louis Gervais, L. Lee Land, C. F. McEnerney, Ralph E. Yoder, Richard P. Cornish, W. Rex Davis, Donald L. Land, and Joseph I. Gervais, co-partners dba Forest Products Company of Oregon.

The defendants are Howard L. Maloney and J. Lee Chambers, a co-partnership dba Maloney-Chambers Lumber Company, hereinafter called the Lumber Company.

The plaintiffs ask further relief restraining the defendants from cutting and removing the timber from the above described land. The defendants, by answer, allege ownership of the standing timber on the land and the right to remove the same. The plaintiffs, by reply, allege an equitable estoppel.

From a determination in favor of the plaintiffs, the defendants have appealed.

The suit is in equity and is triable here de novo. The material facts in this case appear as follows: Prior to August 3, 1945, C. C. Cameron was the owner of a sawmill, sawmill equipment and lumbering equipment, and on that date he sold to the Lumber Company the sawmill, the land upon which it was situated, the personal equipment and the timber on some 1,200 acres of land other than the land above described, together with rights of way for the removal of the timber.

Subsequent thereto, and on June 18, 1946, C. C. Cameron conveyed the timber on the 184 acres above described to one Charles F. Dill. This is the timber in question in this case. Dill paid therefor the full sum of $10,500, and agreements were executed in words and figures as follows:

"THIS CONTRACT made and entered into this eighteenth day of June, 1946

"WITNESSETH between C. C. Cameron, party of the first part and Charles F. Dill, party of the second part that party of the first part has and does hereby sell to party of the second part three and one-half million feet of merchantable fir saw timber situate on the Southwest quarter of Section 9, the

Northeast quarter of Section 17 and the Southeast quarter of Section 16, all in township 13 South, Range 2 West, Willamette Meridian, in Linn County, Oregon.

"Party of the first part acknowledges payment thereon of four thousand dollars ($4,000.00) and party of the second part covenants to pay party of the first part six thousand dollars ($6,500.00) on or before sixty days from date hereof.

"Party of the first part also gives and grants unto the party of the second part the right and privilege and by his agents or contractors, to go over and upon said land and the land adjoining as may be necessary or convenient to log said timber.

> "Chas. F. Dill
>
> "C. C. Cameron."

"WHEREAS the undersigned has this day sold to Charles F. Dill three and one-half million feet of merchantable fir timber on the Southwest Quarter of Section 9, the Northeast Quarter of Section 17 and the Southeast Quarter of Section 16, all in township 13 South, Range 2 West, Willamette Meridian, in Linn County, Oregon.

"NOW should the timber on said land fall short of three and one-half million feet, then in consideration of said sale and the money paid to me therefor, I agree to purchase of Maloney and Chambers a sufficient amount from the adjoining timber to make the full three and one-half million feet, and agree to pay said Maloney and Chambers the sum of three dollars ($3.00) per thousand feet for all said deficiency.

> "C. C. Cameron

"Dated this 18th day of June, 1946."

The full purchase price of the timber was paid by the Lumber Company on August 10, 1946.

Charles F. Dill conveyed his interest therein to the Lumber Company, and it is apparent that he was at all

times acting for and on behalf of the said Lumber Company.

None of the above agreements were filed of record.

Subsequent to the above transactions, and on July 8, 1947, C. C. Cameron being deceased, Maggie Cameron, his widow, by L. L. Swan, as her attorney in fact, entered into an executory agreement to sell to one Alfred J. Owens certain lands, including the land described herein, upon which the timber had been previously sold to Dill. This Owens contract provided for the payment of a sum of money at the execution of the contract and for deferred payments to be made thereon semi-annually until the full sum of the purchase price was paid. The full purchase price had not been paid at the commencement of this suit.

Thereafter Owens gave an option to purchase this agreement to the plaintiff Forest Products Company, and Forest Products Company in turn assigned this option to plaintiff Seguin. Subsequently thereto Seguin exercised the option by purchasing Owens' interest in the contract for the sum of $5,000. The purchase money was obtained by a loan from the Forest Products Company which took, as security from Seguin, an irrevocable option to purchase Seguin's interest in the property.

On the 10th day of October, 1947, an agreement was entered into between the Forest Products Company and the Lumber Company, whereby, in consideration of the payment of $2,800, the Forest Products Company was permitted the use of a road of the Lumber Company through sections 17 and 16 in township 13, range 2, and the right to construct other roads over any other land controlled by the Lumber Company.

The court found that the plaintiffs were the owners

and entitled to the immediate possession of the real property and the timber thereon, *subject only to the duty to pay the balance of the purchase price as provided in the contract* (Owens and Maggie Cameron contract), and, further, that the claimed conveyance of timber held by the Lumber Company was void for uncertainty; that the plaintiffs were bona fide purchasers for value; and that neither they, nor any of them, nor Alfred J. Owens, as their predecessor in interest, had any actual or constructive notice of the interest claimed by the Lumber Company to the standing timber upon the lands in question, and thereupon entered a decree permanently enjoining the Lumber Company from removing or attempting to remove any of the timber upon the said lands or asserting any claim to any right, title or interest in and to the timber on the land.

This suit arose as a result of each of the parties attempting to remove timber from the 184 acres of land in question.

The propositions before this court are, first, were the descriptions in the conveyance from Cameron to Dill sufficiently definite to transfer the title to the timber? Second, is the plaintiff Seguin a bona fide purchaser for value without notice of the prior rights of the Lumber Company? And, third, are the defendants estopped to assert their rights to the timber?

We shall first consider whether the conveyance of the timber to Charles F. Dill, to whose interest the Lumber Company succeeded, described the timber with sufficient certainty to make it a valid conveyance.

■ It is generally stated, in accordance with the general rules concerning deeds or contracts, that the deed or contract for the sale of timber should be definite and certain.

It is the contention of the plaintiffs that the conveyance of timber from C. C. Cameron to Charles F. Dill is void because the description in the conveyance is indefinite, and plaintiffs have cited cases which we will now discuss.

In the case of *Mizell v. Ruffin*, 113 NC 21, 18 SE 72, the conveyance attempted to convey "a portion of the cypress timber" in a certain swamp, and also provided that the grantor could retain from the timber enough for his farm and building purposes. The deed was held void for indefiniteness. In *Watson v. Gross*, 112 Mo App 615, 87 SW 104, the conveyance provided that the vendees could cut and remove "portions of the timber standing on said premises." This deed was held void for uncertainty. In *Dunkart v. Rineheart*, 89 NC 354, the conveyance provided for the sale of "any of my black walnut trees, not exceeding fifteen in number." This conveyance was held void for uncertainty. In the case of *Gilchrist-Fordney Co. v. Thigpen*, 114 Miss 182, 74 So 823, which involved a sale of timber, the conveyance described the land on which the timber grew, as follows: "Fifty acres on the East half of the Northeast quarter of section 10, township 1, Range 10, in Jasper county, Miss." This conveyance was held void for want of certainty in the description. In the case of *Pitts v. Curtis*, 152 NC 615, 68 SE 189, the descriptive part of the conveyance was as follows: "do this day sell and convey to the party of the second part all my pine, oak and poplar timber that the said J. D. Pitts may want for lumber, that will measure 16 inches across stump and upward * * *." This conveyance was held void for uncertainty.

It will readily be seen that in each of the above cases, with the exception of *Gilchrist-Fordney Co. v.*

*Thigpen,* there was left in the purchaser a choice of certain trees, or a selection of an unknown quantity, and until the purchaser had made that choice, no one studying the conveyance would be able to determine the state of mind of the purchaser and what trees or the amount of timber that he might select, and, no definite choice having been made, the description was insufficient. In the *Gilchrist-Fordney Company* case the indefiniteness consisted in the description of the land itself, from which the timber sold was to be cut. No one would be able to determine where the 50 acres described were located on the east half of the northeast quarter. In other words, the described land was indefinite as to location.

A conveyance of timber, being an interest in land, requires the same formalities as those contained in a deed. 34 Am Jur 497, Logs and Timber, § 10.

> "The courts are extremely liberal in construing descriptions of premises conveyed by deed with the view of determining whether those descriptions are sufficiently definite and certain to identify land and make the instrument operative as a conveyance. The purpose of a description of the land, which is the subject matter of a deed of conveyance, is to identify such subject matter; and it may be laid down as a broad general principle that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. * * *" 16 Am Jur 585, Deeds, § 262.

It may be said generally that in times past the courts did not always apply the rule of liberal construction, and any attempt to convey a stated acreage or other designated quantity of land out of a larger

tract without particularly describing the smaller tract failed in its entirety because of the indefiniteness as to where the exact portion of the land could be found. The more modern rule, and the one which we believe is the better and more equitable, is that where there is a conveyance of a stated acreage or other designated quantity of land out of the larger tract, without particularly attempting to locate or describe the smaller tract, the conveyance operates as an undivided interest in the whole. The rule is thus stated:

" * * * But if a grantor, intending to convey, not a specific tract of land particularly described, but to convey a certain quantity or number of acres of land out of a larger quantity or number of acres of land, makes a deed to such quantity or number of acres out of a larger quantity or number of acres of land, the grantee does take an undivided interest in the whole land as tenant in common with the grantor, and his interest is measured by the proportion which the number of acres conveyed to him bears to the whole number of acres in the tract; and this interest he may have set apart to him in severalty by proper partition proceedings." Hodge v. Bennett, 78 Miss 868, 29 So 766, 84 Am St Rep 652; Annot. 117 ALR 1081.

■■ In the conveyance in this case, the land is definitely described. The amount of timber, three and one-half million feet, is definitely set out and there is no attempt to segregate and sell any particular trees distinguishable from the whole.

It may be argued that the conveyance thus construed creates a condition where the parties to the conveyance are tenants in common, and neither could remove the timber thereon without proper partition.

It must be remembered, however, that it is an established rule that the sale of timber, separate and

distinct from the land, carries with it the right of the removal of the timber from that land, and if no stated time for removal is given, a reasonable time is presumed. *Belt v. Matson,* 120 Or 313, 252 P 80.

> "The decisions dealing with the sale of standing timber, whether or not the agreement is considered within the statute of frauds, take practically the same view as regards the right of a purchaser to go upon the land of the vendor to cut and remove. The right is generally regarded as a necessary incident to all sales of growing timber, unless it is manifest that the vendor himself is to cut it, and if not expressed in the agreement of sale, is considered as implied therein. * * *" 34 Am Jur 520, Logs and Timber, § 43. See Annot. 55 LRA 517.

Thus, the effect of the implied terms of the agreement in such a transaction is that the vendee may go upon the land and remove that portion of the whole which he has purchased; as effective a partition as could be granted in a court of equity.

We are satisfied that the description under which the defendants claim, although inartificially drawn, is adequate.

Having determined the question of the sufficiency of the description of the timber, the plaintiffs' case rests upon these further propositions: First, that they are bona fide purchasers for value, without notice, of the prior equity of the Lumber Company, and, as such, entitled to the protection of the recording statute. Second, that the defendants are estopped to assert their rights to the timber.

■■ We shall first consider the question of bona fide purchasers. A conveyance of standing timber in this state is a conveyance of an interest in real property. *Anderson v. Miami Lumber Company,* 59 Or 149, 154,

116 P 1056; *Belt v. Matson,* supra. The Uniform Sales Act relating to personal property does not apply to standing timber. *Reid v. Kier,* 175 Or 192, 152 P2d 417. This court stated with approval the following:

> "The sale of standing timber with the right of the buyer to cut and remove the same * * * is a sale and not a mere license, and a purchaser with notice of an outstanding unrecorded title to said timber takes title to the land subject thereto." *Schroeder v. Toedtemeier,* 184 Or 561, 581 200 P2d 606.

■ Such a sale of standing timber is therefore the sale of an interest in real property and may be recorded. § 70-130 OCLA. The payment of the full purchase price by the Lumber Company entitled it to a deed. *Belt v. Matson,* supra.

■ The rule seems to be well settled that a subsequent bona fide purchaser for value, who is entitled to protection under the recording acts, is a complete purchaser, that is, one clothed with the full legal title. *Wood v. Rayburn,* 18 Or 3, 22 P 521; *Villa v. Rodriguez,* 12 Wall 323, 20 L ed 406; 45 Am Jur 508, Records and Recording Laws, § 147; 55 Am Jur 1059, Vendor and Purchaser, § 674.

■ A contract to purchase land, so long as any portion thereof remains unpaid, is in effect executory and conveys in law no title to the land, the legal title remaining in the vendor, together with all rights incident thereto, he being only under the duty to convey the legal title upon full compliance with the terms of the agreement by the vendee. 55 Am Jur 781, Vendor and Purchaser, § 355. The rule in equity is that the legal title remains in the vendor as trustee to be conveyed to the vendee upon payment of the full purchase price. *Sievers v. Brown,* 34 Or 454, 56 P 171,

45 LRA 642; *Reid v. Kier*, supra. It is seen that neither in law nor in equity does the legal title pass to the purchaser so long as the contract remains executory.

When this suit was commenced by the plaintiffs only a portion of the purchase price had been paid to the grantor. The legal title had not passed and therefore their interest in the land was only equitable.

■ It is a rule that the purchaser of an equitable interest purchases subject to the rights of, and is without protection as against, an earlier purchaser. 55 Am Jur 1064, Vendor and Purchaser, § 682; 66 CJ 1095, Vendor and Purchaser, § 909.

However, the recording acts were enacted so that purchasers of real property or interests therein might be protected against the evils of secret grants and secret liens and the frauds that might be perpetrated upon them. 45 Am Jur 435, Records and Recording Laws, § 29.

■ Generally speaking, when there is actual notice to the subsequent purchaser of a prior right, the purchaser takes subject to the former right.

> "No equitable doctrine is better established than that laid down by Lord Chancellor Hardwicke in Le Neve v. Le Neve (2 Ldg. cases in equity, 160), over a century and a quarter ago, wherein it was held that the person who purchases an estate, although for a valuable consideration, after notice of a prior equitable right, makes himself a *mala fide* purchaser and will not be enabled, by getting in the legal estate, to defeat such prior equitable interest, but will be held a trustee for the benefit of the person whose right he sought to defeat." *Bohlman v. Coffin*, 4 Or 313, 317.

■ And it is a general rule that a purchaser of land who has notice of an outstanding equity before the

full purchase price is paid is not a purchaser for value without notice. *Grogg v. Stevens,* (CA4th Va) 6 F. 862; 8 Thompson on Real Property, Perm ed, § 4477; *La Fon v. Grimes,* (CA5th Tex) 86 F2d 809, 109 ALR 156, and annotations. Generally, however, the harsh rule has been relaxed and the better rule is that subsequent purchasers without notice will be protected to the extent of the payments made prior to notice. *Egbert v. Duck,* 239 Iowa 646, 32 NW2d 404; 8 Thompson on Real Property, Perm ed, § 4478; 5 Tiffany, Real Property, 3rd ed, § 1305, page 96.

■ The evidence on the question of whether or not the plaintiffs had notice prior to the payment of the $5,000 by Seguin to Owens is conflicting and the trial judge resolved this issue against the Lumber Company. We see no reason for disturbing his decision upon this question of fact. The record shows, however, that the plaintiffs did have notice of the Lumber Company's claims a month or two prior to the commencement of this suit. The plaintiffs at that time had paid $5,000 on the purchase price of the land and should in equity ordinarily be protected to the extent of this payment.

However, the plaintiffs have cut and removed from the land some of the standing timber, and, upon payment of the full purchase price under their contract, will become owners of the land subject to the Lumber Company's rights in the timber. It would be inequitable to disregard these facts in determining the extent of the protection to be afforded the plaintiffs, and there should be charged against the sum of $5,000 paid by them before receiving notice of the Lumber Company's prior rights, a sum equal to the value of the timber so cut and removed plus the value of the land. The evidence in the record before us does not

enable us to determine satisfactorily what these values are, and it will therefore become necessary upon the remand for the circuit court to make this determination. In doing so the market value of the timber cut and removed should be fixed as of the time of its severance. The plaintiff Seguin should be given a lien upon the standing timber in controversy for the amount of the balance remaining, if any, after deducting from the sum of $5,000 the combined values of the timber removed and the land, as thus determined.

We shall now consider the further proposition of the plaintiffs that the Lumber Company, by its actions in standing by and not asserting its prior right, should now be estopped to claim the timber sold to Dill.

"This doctrine of equitable estoppel or estoppel *in pais* is that a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right which he otherwise would have had. The one invoking such doctrine must show that he was entitled to rely upon such conduct, action or silence, that he acted thereupon and would be prejudiced if the doctrine of estoppel were not applied." *Marshall v. Wilson,* 175 Or 506, 518, 154 P2d 547.

The duty to speak will not arise unless the party against whom the estoppel is urged knew or should have known that his failure to speak would probably mislead the other party to his injury.

The plaintiffs and their predecessors in interest had paid the taxes and had constructed roads upon the land in question, and it is the position of the plaintiffs that the defendants knew of this, permitted it to be done without speaking, when it was their duty to speak, and therefore are now estopped to set up their claim to the timber. The facts in this case

show that the roads constructed by the plaintiffs were constructed for the purpose of removing timber from other lands, not from the lands in question, and would give no notice to the Lumber Company of any expenditures for the purpose of removing the timber or improving the land.

As to the payment of the taxes upon the land by the plaintiffs, the conveyance of the timber from Cameron to Dill makes no provision for the payment of taxes on the timber, separate from the land, and indeed the entire record is devoid of any agreement by the purchaser of this timber to pay the taxes upon the timber as segregated from the taxes upon the land. There being no duty upon the Lumber Company to pay the taxes we are unable to see how this could be construed as a standing-by to the injury of the plaintiffs whose duty it was to pay the tax.

There appearing nothing in the record requiring the Lumber Company to speak, an estoppel cannot arise.

For the above reasons this case must be reversed and remanded for further proceedings in conformity to this opinion.

PETITION FOR REHEARING

*Courtney R. Johns* and *Melvin Goode,* of Albany, for the petition.

*Weatherford & Thompson,* of Albany, contra.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

PERRY, J.

The plaintiffs have petitioned for a rehearing in this matter, which petition is denied. However, since

the petitioners seem to feel some uncertainty as to the decree to be entered in the circuit court, we will make this additional statement.

The defendants established no interest in or to the 40 acres in the northeast quarter of section 16, township 13, contained in the description in the original opinion; and a decree should be entered quieting plaintiffs' title thereto.

The money judgment to be entered, if any, on behalf of the plaintiffs and against the defendants, after deducting from the $5,000 the value of the timber removed by the plaintiffs plus the value of the 144 acres of land upon which the timber in question is growing, shall be a lien upon the standing timber upon the said 144 acres.

Petition denied.