650 P.2d 1233

Geneva MOUNCE, individually,
Plaintiff/Counterdefendant/Appellee,

v.

Robert E. COLEMAN; William A. Coleman; Richard A. Coleman; and David H. Coleman, Defendants/Counterclaimants/Appellants.

No. 2 CA–CIV 4210.

Court of Appeals of Arizona,
Division 2.

June 1, 1982.

Rehearing Denied Sept. 9, 1982.

Cavness & DeRose by Jerry DeRose and Joe Albo, Globe, for plaintiff/counterdefendant/appellee.

Verity, Smith & Clark, P. C. by Leo N. Smith, Tucson, for defendants/counterclaimants/appellants.

OPINION

BIRDSALL, Judge.

This appeal is from an order quieting title to 160 acres in the plaintiff-appellee, Mounce, and finding that the defendants-appellants, Coleman, have no right, title, interest or estate in the land.

Because an understanding of the conveyances involved is essential to our discussion of this controversy, we will describe them first.

1) On December 13, 1945, Percy C. Harris, et ux, by warranty deed, conveyed to P. H. Coleman all that certain premises described as: "twenty (20) acres out of the *southwest quarter* of section 7 in Township one north of Range sixteen east of the Gila and Salt River Meridian, Arizona, containing one hundred sixty acres (160)." (emphasis supplied)[1]

2) On February 15, 1962, P. H. Coleman and wife, quit claimed this 20 acres, by the same description, to the appellants.

3) On June 15, 1965, Harris, by warranty deed, conveyed to Louis Mounce and Geneva Mounce (appellee), husband and wife:

"All of my undivided right, title and interest in and to the *West half of the Southeast Quarter* of Section Seven (7) and the West half of the Northeast quarter of Section Eighteen (18) in Township One North of Range Sixteen East of the Gila and Salt River Meridian, Arizona, containing one hundred sixty acres.

EXCEPTING THEREFROM twenty (20) acres which was conveyed by Deed to P. D. (sic) Coleman on the 13th day of December, 1945, which Deed is of record in the office of the County Recorder of Gila County, Arizona in Book 61 at Pages 291 and 292." (emphasis supplied)

(A subsequent executor's deed conveyed any interest of Mrs. Harris.)

The appellee and her husband also owned the west half of the west half of Section 7 but that land was not acquired from Harris. Harris never owned the southwest quarter of Section 7.

The appellants contend that their twenty acres was in the southwest quarter of the southeast quarter of Section 7.

Their arguments on appeal are:

1) The appellee failed to prove her own title to the land.

2) The evidence established the appellants' title by adverse possession.

3) The ambiguous 1945 deed should have been construed to give the appellants title to twenty acres in the west half of the southeast quarter of Section 7.

The appellants filed a counterclaim in the trial court. The complaint and counterclaim were tried together. In their counterclaim the appellants prayed, in the alternative, if the court was unable to determine the precise legal description of the twenty acres, that it be adjudged that they own an undivided one-half interest in the southwest quarter of the southeast quarter and that the parties be ordered to proceed by partition (A.R.S. § 12–1211, et seq.).

The undisputed evidence established that the common grantor, Harris, intended to convey by deed # 1 twenty acres in the west half of the southeast quarter.

The land is in the country about six miles north of Globe and was used continuously throughout this period of time by the appellee and her husband for grazing cattle. None of the parties lived on the land. It was fenced together with other land owned by the appellee and contiguous leased federal land. There was a locked gate and Mr. Mounce had the key. Whenever members of the Coleman family requested, he gave them the key so they could go "look at" their land. Before Mr. Mounce died in 1979, he was working with the appellants to try to secure a survey and description of their twenty acres. Until the commencement of this litigation after Mr. Mounce's death, no one questioned that the appellants owned twenty acres somewhere in, at least, the west half of the southeast quarter.

Roseanna Coleman testified that her mother-in-law, who died before the trial, had told her that her father-in-law and the grantor, Harris, had attempted to place piles of rock to establish monuments marking the corners of the twenty acres—significantly, on land in the southeast quarter—

1. The township and range are omitted in subsequent descriptions in this opinion, since they remain the same.

and that her mother had walked to these rock piles in her presence. This evidence continues with the testimony of the appellant, Robert Coleman, that in 1965, about the time of purchase, he was present when his father and Harris talked about going out and stacking up the rocks.

Mrs. Mounce testified that when they purchased from Harris he told her husband, upon inquiry, that the twenty acres was "down there"—throwing his arm out—which she understood to mean in the flat area, the mesa. They were then at the Harris home, which was located on the property.[2]

Roseanna also testified that in early 1966 she was with Mrs. Coleman when they first found a locked gate. Her mother-in-law was upset. They found Mr. Mounce, who told her he was not trying to keep her off the property—that he would never do that. He gave them a key and suggested they make a copy—that they could have the key anytime they wanted it. Later in 1966, according to her testimony, Mrs. Coleman got the key again, as they had done many times, so Mrs. Coleman could take her twin sister out to "show her the land she had purchased with her inheritance."

Despite all of the foregoing, no evidence provided any description of the twenty acres.

■ The appellants argue that the appellee failed to prove her own title because no evidence shows who acquired title to the community one-half interest of Mr. Mounce. In a quiet title action the plaintiff must ordinarily prove his own title and cannot rely on defects in the defendant's title. *Saxman v. Christmann,* 52 Ariz. 149, 79 P.2d 520 (1938); *Allison v. State,* 101 Ariz. 418, 420 P.2d 289 (1966). An exception to this rule arises, however, when the plaintiff is the owner of an undivided interest in the whole as a tenant in common and the action is not against a co-tenant. A co-tenant may bring the action without joining the co-tenants. *Velasco v. Mallory,* 5 Ariz.App. 406, 427 P.2d 540 (1967); *See Also* 74 C.J.S. Quieting Title, § 17. The appellee could quiet title as against the appellants without proving the devolution of her deceased husband's one-half interest in the property. In this case, however, because of the relief which we find the appellants are entitled to on their counterclaim, this creates a problem which we will address later.

■ The next contention we consider is the claim of title by adverse possession. Neither party can rely on adverse possession since there is no evidence that any possession has been hostile for ten years. *See* A.R.S. § 12–526; *Gusheroski v. Lewis,* 64 Ariz. 192, 167 P.2d 390 (1946). Not until after the death of Mr. Mounce, when the appellee changed the lock so that the appellants could not enter if they had a key to the former lock, has there been any use hostile to the interest of the appellants. The use for grazing cattle was permissive. *See La Rue v. Kosich,* 66 Ariz. 299, 187 P.2d 642 (1947); *Brown v. Ware,* 129 Ariz. 249, 630 P.2d 545 (1981).

Finally, we must determine if the trial court correctly concluded that the first deed conveyed no title to the twenty acres. The resolution of this difficult question has caused us to resort to many cases decided in earlier times when the land descriptions appearing in conveyances, although not as well defined as in this modern era of title companies, were surely more colorful. For example, "one acre of land for house setting," *Turner v. Hunt,* 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066 (1938),[3] and "a certain portion of land lying and being in the county of Nash, adjoining the lands formerly belonging to Elias Barrett and others, on both sides of the road leading to Nashville . . . ." *Smith v. Proctor,* 139 N.C. 314, 51 S.E. 889 (1905), and ". . . a piece of land fronting on said river in the immediate

2. At the time of trial the property was all virtually unimproved.

3. Since oil was first produced on this land about the time of the conveyance and the party

Hunt is H. L. Hunt, that litigation, although involving only one acre, may have been of significant economic importance.

vicinity of the east end of said dam, twelve rods in length on the bank of said river . . . ." *Smith v. Furbish,* 68 N.H. 123, 44 A. 398 (1894). From the analysis of the many cases reviewed in the annotation at 117 A.L.R. 1071 (1938) entitled "Validity and effect of deed which purports to convey specified acreage or quantity of land out of a larger tract, with or without a right of selection expressed," one can find a desired result for almost any fact situation. The one rule that holds true as to any conveyance is that "a deed should be held to pass some interest if such effect may be given to it consistently with the law and the terms of the instrument," 117 A.L.R. 1072; 23 Am.Jur.2d Deeds § 224.

The Harris-Coleman warranty deed conveyed a designated quantity of land (twenty acres) of a larger tract (160 acres) without any attempt, in the instrument itself, to locate and describe a particular parcel as that conveyed. According to what the Oregon Supreme Court in *Seguin v. Maloney,* 198 Or. 272, 253 P.2d 252, 35 A.L.R.2d 1412 (1953) describes as the more modern rule, such a conveyance operates to give the grantee an undivided interest in the land as a tenant in common. The court further held that the extent of the undivided interest is measured by the proportion which the number of acres conveyed bears to the whole number of acres in the tract.

■ The deed in the instant case presents additional problems which do not easily fit within the rule. The reference to the southwest quarter of section 7 in the Harris-Coleman deed was obviously a mistake. The appellee does not seriously question that conclusion. Nevertheless the deed does describe 160 acres. Twenty acres out of 160 would be a fractional ⅛ of the whole, whereas 20 acres out of 80, if it is determined that the deed was intended to describe only the land owned by Harris in section 7, the west half of the southeast quarter, would be one-quarter of the whole. We believe, in order to give effect to the deed, and further construing it, as we must, in favor of the grantee, 23 Am.Jur.2d Deeds § 165, that we must infer that Harris intended that the twenty acres be "out of" the west half of the southeast quarter of section 7.

■ But the appellee argues the deed was intended to convey a specific tract of land, and since that land was not sufficiently described and cannot be located, the deed cannot be construed to create an undivided interest, but must be declared void. We do not agree. According to *Seguin,* that is the rule in times past. Even if it is considered to be the rule, we find that the language in the deed itself does not indicate an intent to convey a particular tract. Rather the evidence shows that after the conveyance the parties attempted to fix the area conveyed. This was never accomplished.

Thus we return to square one. We hold that the trial court erred in finding the deed totally ineffective. The deed should have been given effect as a conveyance of an undivided one-quarter interest in the west half of the southeast quarter of section 7. The appellants are entitled to the alternative relief which they sought, partition.

■ As we have noted, the appellee failed to prove the devolution of the interest of her deceased husband. She may be the owner of that interest, but for all the record shows, it may be owned by strangers to this action. If other persons acquired that interest, they are not before the court and neither the trial court nor this court can by any ruling affect their title. As to the appellants' counterclaim they may be indispensable parties. *See* Rule 19, Rules of Civil Procedure, 16 A.R.S. For this reason our holding that the appellants own an undivided interest in the land affects only such interest as the appellee owns.

Reversed and remanded for further proceedings consistent herewith.

HOWARD, C. J., and HATHAWAY, J., concur.