NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FOUR 3'S LLC, an Arizona Limited Liability Company,
*Plaintiff/Appellant/Cross-Appellee*,

v.

JAMES D. SCOTT and MICHELLE SCOTT, Husband and Wife,
*Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 20-0281
FILED 4-6-2021

Appeal from the Superior Court in Coconino County
No. S0300CV201500361
The Honorable Ted Stuart Reed, Judge

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**

COUNSEL

Law Offices of Adam B. Decker, PLLC, Mesa
By Adam B. Decker
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Aspey Watkins & Diesel, PLLC, Flagstaff
By Jason J. Bliss, John W. Carlson
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

---

**M O R S E**, Judge:

¶1        Four 3's LLC appeals the superior court's grant of summary judgment for James Scott and Michelle Scott.  The Scotts cross-appeal, arguing the superior court erred by failing to award them their attorney fees.  For the reasons herein, we affirm the court's summary judgment in favor of the Scotts, but reverse and remand on the issue of the Scotts' attorney fees and costs.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2        In 2012, Mike Seabrook, through his company MI Construction, bought a parcel of property ("Property") for $90,000.  Shortly thereafter, James Scott approached Seabrook and proposed a joint venture to purchase and develop residential properties.  To that end, the two created MIJ Homes, LLC.  But James Scott failed to make certain promised capital contributions to MIJ Homes, and it wasn't long before both Seabrook and MI Construction were struggling financially.

¶3        Later, Seabrook approached Chris Finn, the owner of Four 3's, about building an investment home on the Property.  Seabrook told Finn that the two of them could build a half-million-dollar home on the Property, and offered to sell the Property to Finn.  Finn expressed interest and made immediate plans to use Four 3's to purchase and develop the Property in partnership with Seabrook.

¶4        What Finn did not know was that Seabrook was in bankruptcy and MI Construction was on the brink of financial failure.

---

[1]        Because we are reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-movant. *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 140, ¶ 26 (App. 2006).  Though we recognize most of these facts are disputed by the Scotts, none of the disputes are material to the issues presented in this decision.

Fearing MI Construction's creditors would seize its assets, including the Property, Seabrook went to James Scott for help. James Scott contrived a plan wherein MI Construction would transfer the Property to James Scott's and Seabrook's joint venture, MIJ Homes. Then, after MI Construction was out of financial trouble, MIJ Homes would deed the Property back to MI Construction.

**¶5**         However, things did not proceed as planned. Though Seabrook had agreed to deed the property to MIJ Homes, James Scott prepared the deed to transfer the Property to him personally. Seabrook, failing to read the documents, executed the deed and James Scott swiftly recorded it. James Scott deposited a check for $25,000 into MI Construction's bank account. On the check, James Scott noted it was payment for the purchase of the Property.

**¶6**         Meanwhile, Seabrook continued negotiating with Finn to sell the Property. Ultimately, Finn agreed to purchase the Property for $70,000, and paid Seabrook outside of escrow. When Seabrook asked James Scott to transfer the Property back to MI Construction, he refused.

**¶7**         Finn then discovered that Seabrook could not deliver the deed to the Property unless James Scott signed the deed over to him. Finn, having already paid Seabrook $70,000, was left with no deed to the Property and no way to obtain title.

**¶8**         Finn, through Four 3's, filed suit against the Scotts and MI Construction. He accused the defendants of violating the Uniform Fraudulent Transfer Act and asked the court to quiet title to the Property in Four 3's name. Additionally, Four 3's raised claims for equitable relief, asking for the court to either force the Scotts to transfer the Property to Four 3's or to use other equitable remedies to grant Four 3's title to the Property. In the alternative, Four 3's accused the defendants of forming a civil conspiracy to commit fraud.

**¶9**         The Scotts filed a counter-claim and third-party complaint, asking the court to quiet title in their name and to award damages for the filing of a groundless lis pendens against the Property by Finn and Four 3's, under A.R.S. § 33-420.

**¶10**         The Scotts moved for summary judgment on all claims. The Scotts disputed the allegations of deceit and fraud but argued that, even accepting Four 3's allegations, James Scott was the lawful owner of the Property because Four 3's agreement to purchase the Property did not occur until after the warranty deed transferring title from MI Construction to

James Scott was recorded. Thus, the Scotts contended that Four 3's claims failed as a matter of law.

¶11    The superior court agreed and entered judgment for the Scotts on all claims. The court's judgment found that James Scott was the true owner of the Property, and Four 3's and Finn were estopped from claiming any right to the Property. The court also ordered Four 3's to pay James Scott $5,000 in damages. The court did not enter any judgment against MI Construction.

¶12    Additionally, the Scotts argued they were entitled to their attorney fees under A.R.S. §§ 12-1103(B) and 33-420(A). The superior court disagreed and ordered the parties to bear their own fees and costs.

¶13    Four 3's timely appealed and the Scotts timely cross appealed.

## DISCUSSION

### I.    Jurisdiction.

¶14    We begin by noting that the judgment in this case was improperly certified as final under Arizona Rule of Civil Procedure 54(c). MI Construction was properly served as a defendant, but the claims against it have not been resolved. *See McHazlett v. Otis Engineering Corp.*, 133 Ariz. 530, 532 (1982); *Madrid v. Avalon Care Center-Chandler, LLC*, 236 Ariz. 221, 224-25, ¶ 11 (App. 2014) (providing that this court lacks jurisdiction if parties remain in the action despite Rule 54(c) language).

¶15    At oral argument, both parties requested that we invoke our special action jurisdiction. "Although this court lacks appellate jurisdiction, we may exercise our discretionary special action jurisdiction under appropriate circumstances . . . ." *Phillips v. Garcia*, 237 Ariz. 407, 410, ¶ 7 (App. 2015). Considering the procedural posture, and because both parties have requested we do so, we exercise our special action jurisdiction over this case. *See* A.R.S. § 12-120.21(A)(4); Ariz. R.P. Spec. Act. 1(a).

### II.    Standard of Review.

¶16    We review a grant of summary judgment de novo. *Schugg*, 212 Ariz. at 140, ¶ 26. We will affirm if there is no genuine issue of material fact in dispute and if the movants were entitled to judgment as a matter of law. *Goldman v. Sahl*, 248 Ariz. 512, 519, ¶ 16 (App. 2020). "If the evidence would allow a jury to resolve a material issue in favor of either party, summary judgment is improper." *Comerica Bank v. Mahmoodi*, 224

Ariz. 289, 291, ¶ 12 (App. 2010).  Additionally, we will affirm the grant of summary judgment if the trial court was correct for any reason.  *Federico v. Maric*, 224 Ariz. 34, 36, ¶ 7 (App. 2010).  We review the proper interpretation of a statute de novo.  *State v. Potter*, 248 Ariz. 347, 349, ¶ 9 (App. 2020).

## III.    Four 3's Appeal.

### A.    Four 3's Equitable Claims.

¶17        We start with Four 3's equitable claims, which essentially all seek the same equitable relief.[2]  Specifically, Four 3's asked the superior court to either establish a constructive trust for the Property in their favor or, alternatively, order James Scott to transfer title to the Property to Four 3's.  The superior court held that Four 3's did not have standing to raise claims for equitable relief because it had notice of James Scott's claim to the Property when it attempted to purchase the Property from Seabrook.  Four 3's argues this was error.  We agree with the superior court.

¶18        Like the superior court, we begin with the text of A.R.S. § 33-416:

> The record of a grant, deed or instrument in writing authorized or required to be recorded, which has been duly acknowledged and recorded in the proper county, shall be notice to all persons of the existence of such grant, deed or instrument, but a mortgage of real property may be recorded and constructive notice and the contents thereof given as provided in § 33-415.

¶19        The superior court read this statute to mean that "Four 3's is deemed by law to have known that Seabrook did not own the property he was purporting to sell."  Because Four 3's had such notice, the superior court held it was not a bona-fide purchaser and its claims failed as a matter of law.

¶20        We reject Four 3's argument that a court must find a recorded instrument valid in all respects before imputing constructive notice to other persons.  We interpret statutes according to their plain language.  *See Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, 99, ¶ 5 (App. 2020).  Nothing in the plain language of A.R.S. § 33-416 requires a court to analyze the validity of a deed before the statute can take effect.  The statute plainly provides that

---

[2]        These are claims for injunctive relief, specific performance, and for the creation of a constructive trust.

once a deed is recorded, it serves as constructive notice to "all persons" of the existence of that deed.

¶21        Under A.R.S. § 33-416, Four 3's had constructive notice of the deed transferring ownership of the Property from MI Construction to James Scott. *See Warren v. Whitehall Income Fund 86*, 170 Ariz. 241, 243 (App. 1991) ("Constructive notice and actual notice have the same effect and when the purchaser of land has notice of a prior claim to the land, he takes it subject to that claim."). Knowing that another person had record title to the Property, Four 3's was not a bona-fide purchaser. *Id.* Even a non-bona-fide purchaser, however, may stand in the "same position as" the seller, *id.* at 243-44, and Four 3's alleges that MI Construction, through Seabrook, made a unilateral mistake in transferring the property due to the misrepresentations of James Scott.

¶22        Taking its allegations as true, if Four 3's were a non-bona-fide purchaser, then it could attempt to void the deed by standing in MI Construction's shoes. *See Parrish v. United Bank of Ariz.*, 164 Ariz. 18, 20 (App. 1990); *see also Ignatova v. Ignatova*, 1 CA-CV 19-0100 FC, 2020 WL 547271, at *2, ¶ 10 (Ariz. App. Feb. 4, 2020) (mem. decision) ("[A] disclaimer deed may be voided by a unilateral mistake induced by misrepresentation."). But Four 3's was not a non-bona-fide purchaser. It never purchased the Property, but instead had a non-actionable agreement with MI Construction to purchase the Property. It is undisputed that the agreement failed to comport with the statute of frauds, *see* A.R.S. § 44-101, and that Seabrook did not own the Property at the time the agreement was made. However, Four 3's argues it is still entitled to an equitable remedy in the form of a constructive trust. *See Gabitzch v. Cole*, 95 Ariz. 15, 20 (1963) ("A trust created by operation of law is not within the Statute of Frauds."). Four 3's asserts that creating a constructive trust is appropriate because Seabrook only intended to deed the Property to MIJ Homes for safekeeping until it could safely be transferred to Four 3's, and James Scott's alleged malfeasance prevented that transfer from occurring.

¶23        We reject this argument because "[a] constructive trust is a remedial device created by courts of equity to compel one who unfairly holds a property interest to convey that interest to another *to whom it justly belongs*." *Harmon v. Harmon*, 126 Ariz. 242, 244 (App. 1980) (emphasis added). Four 3's does not explain why the Property "justly belongs" to it, when it had constructive knowledge that MI Construction did not own the Property at the time the non-actionable agreement for sale was made. Perhaps Four 3's has other claims it may raise against Seabrook and MI

Construction, but we do not see how Four 3's has any equitable claim to the Property.[3]

**¶24**     Four 3's does not purport to have any relationship or agreement with the Scotts.  Instead, Four 3's asserts it has the right to unwind the transfer of the Property it attempted to buy from a prior owner.  Because Four 3's was on notice that MI Construction did not own the Property at the time it agreed to buy it, we fail to see how Four 3's has any claim for equitable relief.  Accordingly, we affirm the superior court's grant of summary judgment on Four 3's claims for equitable relief.

### B.     Four 3's Remaining Claims.

**¶25**     We turn now to Four 3's remaining claims for quiet title, civil conspiracy, and an alleged violation of the Uniform Fraudulent Transfer Act.  Because Four 3's fails to cite any evidence or law in support of these claims, we affirm the superior court's grant of summary judgment.

**¶26**     Four 3's argues the superior court erred by granting summary judgment to the Scotts on its quiet-title claim.  "In a quiet title action the plaintiff must ordinarily prove his own title and cannot rely on defects in the defendant's title." *Mounce v. Coleman*, 133 Ariz. 251, 253 (App. 1982).  Both before the superior court and on appeal, Four 3's fails to provide any evidence that it holds title to the Property.  At most, Four 3's claims that James Scott is not entitled to the Property.  That is not enough to defeat summary judgment. *See id.*

**¶27**     Civil conspiracy occurs when "two or more people . . . agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers, Teamsters, and Cement Masons Local No. 390 Pension Tr. Fund*, 201 Ariz. 474, 498, ¶ 98 (2002) (citation omitted).  Four 3's argues that "evidence and facts exist . . . sufficient for the claim of civil conspiracy . . . to be tried before the [superior court]."  But Four 3's never cites the evidence and facts it relies on, nor does it explain which people were involved in the alleged conspiracy.  Given this, and our examination of the record, we see no error with the superior court's grant of summary judgment on this claim.

---

[3]     MI Construction is still a defendant in the superior court, and Four 3's has raised similar claims against that entity.  Nothing herein should be taken to suggest a particular outcome on Four 3's claims against MI Construction.

¶28 We last turn to Four 3's claim for violations of Arizona's Uniform Fraudulent Transfer Act. *See* A.R.S. § 44-1001. "[T]o set aside a transfer as fraudulent, there must have been a valid claim *at the time of the transfer*, meaning a right to payment." *Hullett v. Cousin*, 204 Ariz. 292, 296, ¶ 21 (2003) (emphasis added); *see also* A.R.S. § 44-1001(2). Assuming Four 3's had any right of payment against MI Construction, that right arose after the transfer of the Property occurred. And Four 3's makes no argument to the contrary. In fact, Four 3's fails to address the Uniform Fraudulent Transfer Act at all.

¶29 Because Four 3's cites no evidence and provides little, if any, argument on its remaining claims, it has failed to show error. Consequently, we affirm the grant of summary judgment.

## IV. The Scotts' Cross-Appeal.

¶30 The sole issue raised on cross-appeal is the superior court's failure to award the Scotts their attorney fees. All parties agree that the Scotts were granted summary judgment on their claim brought under A.R.S. § 33-420(A). "A.R.S. § 33-420 mandates the awarding of attorney's fees." *Janis v. Spelts*, 153 Ariz. 593, 598 (App. 1987). The superior court erred on this issue. We reverse the judgment as it pertains to attorney fees and remand so that the superior court may award reasonable attorney fees incurred for that claim. We also reverse the judgment to the extent it fails to award the Scotts the costs associated with their quiet-title claim and instruct the superior court to award the Scotts those costs. *See* A.R.S. § 12-1103(B) (mandating an award of costs to the prevailing plaintiff in a quiet-title claim, so long as certain procedural steps are followed).

¶31 We affirm the superior court's denial of the Scotts' request for fees under A.R.S. § 12-1103 for all other attorney fees incurred.

## V. Attorney Fees and Costs on Appeal.

¶32 All parties request their reasonable fees and costs on appeal. As noted, A.R.S. § 33-420 mandates the award of attorney fees to the prevailing owner in a false documents case. *See Janis*, 153 Ariz. at 598. Accordingly, the Scotts are awarded their reasonable attorney fees related to that claim and their costs incurred on appeal in an amount to be determined upon timely compliance with ARCAP 21.

## CONCLUSION

**¶33** For the above-stated reasons, we affirm the superior court's grant of summary judgment on all claims but reverse the judgment to the extent it denies the Scotts their attorney fees. The case is remanded to the superior court for the limited purpose of awarding the Scotts their reasonable attorney fees. Further, the Scotts are awarded their costs on appeal and reasonable attorney fees incurred in defense of the appeal of their false documents claim, contingent upon their timely compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA